**No. 25-20366**

# In the United States Court of Appeals for the Fifth Circuit

CANDEL & PARTNERS SAS,
*Movant–Appellant,*

*v.*

ExxonMobil Corporation,
*Defendant–Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:24-mc-01948-KPE

# BRIEF OF APPELLANT CANDEL & PARTNERS SAS

Gabriela M. Ruiz
KING & RUIZ LLP
2 Biscayne Blvd., Suite 3200
Miami, Florida 33131
Tel.: (305) 395-4984
gruiz@kingruiz.com

Stephen R. Halpin III
KING & RUIZ LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Tel.: (212) 500-6499
shalpin@kingruiz.com

November 3, 2025

**No. 25-20366**

---

In the United States Court of Appeals
for the Fifth Circuit

CANDEL & PARTNERS SAS,
*Movant–Appellant,*

*v.*

ExxonMobil Corporation,
*Defendant–Appellee.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following list of persons and entities as described in the fourth sentence of Federal Rule of Appellate Procedure 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| **Appellant** | **Appellate Counsel** |
| --- | --- |
| Candel & Partners SAS | Gabriela M. Ruiz<br>King & Ruiz LLP<br>Miami, Florida |
| | Stephen R. Halpin III<br>King & Ruiz LLP<br>New York, New York |

i

| **Appellee** | **Appellate Counsel** |
|---|---|
| ExxonMobil Corporation | Santosh Aravind<br>Scott Douglass & McConnico, LLP<br>Austin, Texas |
| | Rachel Stephenson<br>Scott Douglass & McConnico, LLP<br>Austin, Texas |

Allan Green – Owner of Candel. Candel has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Benjamin Tolub – Chief Executive Officer of Candel.

Esso S.A.F. – Subsidiary of ExxonMobil. Candel is a minority shareholder of Esso.

Charles Amyot – Chief Executive Officer and Chairman of Esso.

North Atlantic – Company in negotiations with ExxonMobil to acquire ExxonMobil's controlling stake in Esso.

  */s/ Gabriela M. Ruiz*  
Gabriela M. Ruiz

*Attorney for Appellant*
*Candel & Partners SAS*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Candel & Partners SAS ("Candel") submits that oral argument would aid the Court. Candel maintains that the district court's failure to explain its decision below warrants vacatur and remand, just as in *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757 (5th Cir. 2024). But should the Court have questions on that point, or on the factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and their application here, Candel would welcome the opportunity to address the panel in person.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF CONTENTS ..................................................................... iv

TABLE OF AUTHORITIES ............................................................... vii

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ............................................................................... 1

STATEMENT OF ISSUES .................................................................. 2

STATEMENT OF THE CASE ............................................................. 3

    A.    Factual Background ........................................................... 3

        1.    Related-party agreements and their implications for Esso. ................................................................. 4

        2.    Esso breaches minority shareholder protections. ......... 5

        3.    A financial expert identifies anomalies in Esso's recent financial statements. ......................................... 7

        4.    Candel seeks answers in the French courts. ................. 8

        5.    Candel seeks relief in the French courts in the French Proceeding. ...................................................... 10

    B.    Procedural History ............................................................. 12

        1.    The district court grants the Application *ex parte* and preserves ExxonMobil's right to move to quash. ......................................................................... 12

        2.    ExxonMobil rebuffs Candel's attempts to meet and confer regarding any objections to the scope of the discovery sought ....................................................... 13

3.    The district court orally grants ExxonMobil's Motion to Quash after a hearing. ................................. 15

4.    Candel moves for reconsideration after ExxonMobil announces its intent to sell its controlling stake in Esso, but the district court denies reconsideration and enters its Final Judgment. ................................................ 15

SUMMARY OF THE ARGUMENT ........................................................ 16

ARGUMENT .......................................................................................... 19

I.    The district court's grant of ExxonMobil's Motion to Quash and denial of § 1782 discovery without providing reasoning contravenes this Court's precedent. ............................... 19

   A.    A district court must explain its decision to deny a § 1782 application or quash a subpoena. ............................ 20

   B.    The district court failed to explain its decision to grant ExxonMobil's Motion to Quash, hindering this Court's ability to effectively review the decision on appeal. ............. 22

II.   The district court abused its discretion in concluding the *Intel* factors cut against permitting § 1782 discovery and in favor of granting ExxonMobil's Motion to Quash. ..................................... 27

   A.    The district court incorrectly concluded under the second *Intel* factor that the French courts would not be receptive to the discovery sought. ......................................... 28

      1.    A party resisting § 1782 discovery must provide "authoritative proof" that the foreign tribunal would reject the requested evidence. ........................... 29

      2.    The district court did not identify any "authoritative proof" the evidence sought would be rejected in the French Proceeding, and the record does not contain such proof. ......................................... 32

B.    The district court incorrectly concluded under the third *Intel* factor that the § 1782 discovery Candel seeks conceals an attempt to circumvent French proof-gathering restrictions. ........................................................37

    1.    Circumvention under the third *Intel* factor requires an intentional attempt to avoid a specific foreign-proof-gathering restriction. ............................37

    2.    The district court identified no specific foreign-proof-gathering restriction and did not find that any circumvention was intentional. ............................39

C.    The district court erred under the fourth *Intel* factor by not considering Candel's offers to narrow the requested discovery to address any concerns of overbreadth, undue burden, or intrusiveness. .......................................................40

D.    The district court erred under the first *Intel* factor by acknowledging ExxonMobil is not a participant in the French Proceeding but nonetheless concluding that the factor weighed against § 1782 discovery. ...............................43

CONCLUSION ..........................................................................45

CERTIFICATE OF SERVICE..................................................47

CERTIFICATE OF COMPLIANCE ........................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Application of Sarrio S.A. for Assistance Before Foreign Tribunals,*
  173 F.R.D. 190 (S.D. Tex. 1995)......................................................30

*Banca Pueyo SA v. Lone Star Fund IX (US), LP,*
  55 F.4th 469 (5th Cir. 2022)...........................................................12

*Banco Mercantil de Norte, S.A. v. Paramo,*
  No. 24-20542, 2025 WL 2305399 (5th Cir. Aug. 11, 2025) .................25

*Banco Mercantil de Norte, S.A. v. Paramo,*
  No. 4:23-MC-01188, 2024 WL 4905981 (S.D. Tex. Nov. 27, 2024)......25

*Banco Mercantil de Norte, S.A. v. Paramo,*
  114 F.4th 757 (5th Cir. 2024).....................................................*passim*

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,*
  613 F. App'x 319 (5th Cir. 2015) ................................................*passim*

*Chandler v. City of Dallas,*
  958 F.2d 85 (5th Cir. 1992) ...........................................................26

*Cowan v. Cleveland Sch. Dist.,*
  748 F.3d 233 (5th Cir. 2014) .........................................................26

*Cutter v. Wilkinson,*
  544 U.S. 709 (2005) ......................................................................27

*Davis v. E. Baton Rouge Parish Sch. Bd.,*
  570 F.2d 1260 (5th Cir. 1978) .......................................................26

*Ecuadorian Plaintiffs v. Chevron Corp.,*
  619 F.3d 373 (5th Cir. 2010) ....................................................*passim*

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F.3d 1095 (2d Cir. 1995)....................................................30, 36

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.,*
  27 F.4th 136 (2d Cir. 2022) .....................................................*passim*

*Gov't of Ghana v. ProEnergy Servs., LLC,*
  677 F.3d 340 (8th Cir. 2012) ...............................................................45

*In re Application of Geert Duizendstraal,*
  No. CIV. A. 3:95-MC-150X, 1996 WL 772508
  (N.D. Tex. Mar. 4, 1996) .....................................................................30

*In re B&C Holding GmbH,*
  No. CV 23-365-JWD-EWD, 2023 WL 8171733
  (M.D. La. Nov. 24, 2023) ....................................................................45

*In re Bayer AG,*
  146 F.3d 188 (3d Cir. 1998)...............................................................45

*In re China Constr. Bank (Asia) Corp. Ltd.,*
  No. 23-MC-17 (JMF), 2023 WL 3791711 (S.D.N.Y. June 2, 2023)......42

*In re Consellior SAS, Kerfraval, Ass'n de Documentation Pour
  L'industrie Nationale,* No. 13 MC 34, 2013 WL 5517925
  (D. Conn. Oct. 2, 2013) ................................................................33, 34

*In re Deepwater Horizon,*
  785 F.3d 986 (5th Cir. 2015) ..............................................................32

*In re Empresa Publica de Hidrocarburos del Ecuador - EP Petroecuador
  v. WorleyParsons Int'l, Inc.,*
  No. 4:19-MC-2534, 2020 WL 13412872 (S.D. Tex. Apr. 13, 2020) ......31

*In re Ex Parte Application of Mentor Graphics Corp.,*
  No. 16-MC-80037-HRL, 2017 WL 55875 (N.D. Cal. Jan. 4, 2017)......34

*In re Ex Parte Application of Societe d'Etude de Realisation et
  d'Exploitation Pour le Traitement du Mais,*
  No. 13-MC-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ...........33

*In re Lloyd's Reg. N. Am., Inc.,*
  780 F.3d 283 (5th Cir. 2015) .......................................................25, 45

*In re MacDonell,*
  No. 2:20-CV-1332 KJM DB, 2020 WL 3961958
  (E.D. Cal. July 13, 2020) ....................................................................33

*In re Ord. Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proc.*,
No. CV 4:23-MC-96, 2025 WL 714374 (E.D. Tex. Mar. 5, 2025) ....30-31

*In re Solines*,
No. MC 18-3680, 2018 WL 2225134 n.4 (E.D. La. Apr. 30, 2018),
*report and recommendation adopted,* No. CV 18-3680,
2018 WL 2219357 (E.D. La. May 15, 2018) ......................................... 31

*In re Valitus, Ltd.*,
No. CIV 20-MC-91133-FDS, 2020 WL 6395591
(D. Mass. Nov. 2, 2020) ....................................................................... 33

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ..................................................................... *passim*

*London v. Does 1-4*,
279 F. App'x 513 (9th Cir. 2008) .......................................................... 34

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .................................................................. 30

*PDK Lab'ys Inc. v. U.S. DEA*,
362 F.3d 786 (D.C. Cir. 2004) .............................................................. 27

*Rothe v. Aballi*,
No. 20-12543, 2021 WL 4429814 (11th Cir. Sept. 27, 2021) .............. 45

*Rutila v. Dep't of Transportation*,
12 F.4th 509 (5th Cir. 2021) ................................................................ 27

*SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*,
110 F.4th 586 (3d Cir. 2024) ............................................................... 35

*Texas Keystone, Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) ............................................... 1, 20, 21, 22

*United States v. Lee*,
358 F.3d 315 (5th Cir. 2004) ............................................................... 26

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) .................................................... 21, 41, 42

**Statutes & Other Authorities:**

28 U.S.C. § 1291..................................................................................1

28 U.S.C. § 1331..................................................................................1

28 U.S.C. § 1782............................................................................*passim*

Fed. R. Civ. P. 1 ...............................................................................42

x

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Candel commenced the action below by filing an application to take discovery for use in a foreign proceeding under 28 U.S.C. § 1782 (the "Application"). The district court, the Honorable Keith P. Ellison of the United States District Court for the Southern District of Texas, had subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782. ROA.1399.

After initially granting the Application on an *ex parte* basis on December 13, 2024, ROA.1416–17, the district court orally granted ExxonMobil's motion to quash the Application ("Motion to Quash") at a hearing on May 13, 2025 (the "May 13, 2025 ruling"). ROA.2007–08. On July 24, 2025, the district court entered an order denying Candel's motion for reconsideration ("Motion for Reconsideration"), ROA.1968–70, and entered "final judgment" for Exxon. ROA.1971 ("Final Judgment").

On August 21, 2025, Candel timely noticed this appeal. ROA.1972. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 552 (5th Cir. 2012) (per curiam).

1

## STATEMENT OF ISSUES

1. This Court has "previously held that a district court must offer reasoning whenever it *grants* a motion to quash § 1782 discovery." *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758 (5th Cir. 2024). Did the district court here err by failing to adequately explain its decision to grant ExxonMobil's Motion to Quash the Application?

2. In deciding whether to authorize discovery under § 1782, a district court should consider the four factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (the "*Intel* factors"). *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 (5th Cir. 2010). Did the district court here abuse its discretion in ruling that the *Intel* factors weighed against the discovery sought by Candel?

## STATEMENT OF THE CASE

### A.    Factual Background[1]

Candel is a minority shareholder in the French company Esso S.A.F. ("Esso"), holding 84,700 duly registered shares. ROA.25. ExxonMobil is Esso's controlling shareholder through indirect ownership of the majority (82.89%) of Esso's shares. ROA.1289–90. Over the last few years, Candel has developed evidence that Charles Amyot—Esso's Chief Executive Officer and Chairman—has been operating Esso for the benefit of ExxonMobil at the expense of minority shareholders like Candel, including through the use of secretive related-party transactions with ExxonMobil.

Accordingly, on November 7, 2024, Candel commenced a derivative action against Mr. Amyot in France asserting violations of law and mismanagement of Esso (the "French Proceeding"). By its Application here, Candel seeks evidence from ExxonMobil for use in the French Proceeding. *See* 28 U.S.C. § 1782(a).

---

1. The district court's May 13, 2025 ruling includes no factual recitation or findings of fact. This Factual Background is drawn from Candel's memorandum in support of its Application and other supporting papers.

### 1. Related-party agreements and their implications for Esso.

Esso is deeply embedded in the ExxonMobil group. In fact, related-party agreements account for 33.7% of Esso's sales and 71% of its purchases. ROA.1371, 1373. French law imposes certain reporting and governance requirements for shareholders to monitor and regulate such related-party transactions, and noncompliance may result in civil or criminal liability for directors. ROA.1374–75. These requirements ensure that related-party transactions are in the best interests of the corporation, and not just in the self-interest of controlling shareholders at the expense of minority shareholders. ROA.1375–76. Consistent with these legal obligations, France's financial markets regulator recommends that publicly listed companies set up a website disclosing a company's policies concerning regulated agreements. ROA.1375.

In 2002, Esso implemented articles of association that protected Esso's minority shareholders by requiring approval, or at least disclosure to shareholders, of Esso's contracts. Thus, while Article 225-38 of the French Commercial Code required as a matter of law that Esso's board approve related-party transactions, ROA.1299—such as those between Esso and its majority controlling shareholder ExxonMobil—Article 23 of

4

Esso's articles of association imposed even stricter requirements. *See* ROA.597. While "agreements entered into in the ordinary course of business and on arm's length terms" did not require prior board approval, the articles of association gave "[a]ny shareholder . . . the right to obtain a copy of these agreements." ROA.597.

As a result, Esso's board would be required to approve *every* related-party agreement, as required by the French Commercial Code, and shareholders could obtain *every other* agreement. *See* ROA.597. By these measures, minority shareholders could ensure that Esso's agreements were entered into for the benefit of Esso and not merely for the benefit of its corporate parent.

### 2. Esso breaches minority shareholder protections.

In 2022, however, Esso's board of directors changed Esso's articles of association to remove Esso's obligation to make agreements available to shareholders under Article 23. *See* ROA.981, 995. Following that change, Esso unsurprisingly disclosed substantially fewer agreements than before. *See* ROA.692–93.

This secrecy has harmed Esso's minority shareholders, as confirmed in a proceeding brought by three other Esso minority

shareholders. In a proceeding before the Court of Appeal of Versailles (the "Versailles Court"), those minority shareholders alleged that Esso failed to disclose required information to minority shareholders, and that Esso had entered into agreements with ExxonMobil affiliates that benefited the corporate parent but were contrary to Esso's corporate interests. *See* ROA.656–57 (The "Versailles Court's Decision").

On October 20, 2022, the Versailles Court found that Esso had failed to disclose all its related-party agreements. ROA.661–62. The Versailles Court also stated that, faced with Esso's shortcomings, the minority shareholders "have plausible evidence of grievances that they will be able to develop in a future liability suit against the directors." ROA.662. Indeed, the Versailles Court concluded that Esso's practices concerning related-party agreements "reveal serious indications of a lack of information likely to fuel fears of practices contrary to the company's corporate interests, given the opacity thus maintained by the company." ROA.662. The Versailles Court thus appointed an expert to review Esso's agreements and issue a report with its findings to the parties. ROA.664–65.

Meanwhile, Candel has tried repeatedly but unsuccessfully to get further information from Esso about these agreements. Following the Versailles Court's Decision, Candel asked Mr. Amyot why Esso had changed its approach to related-party agreements and why, despite the Versailles Court's Decision, Esso still had not disclosed the wrongfully withheld agreements. *See* ROA.692–93. When Candel received no satisfactory answers to these questions at the June 22, 2023 annual meeting, it posed them to Mr. Amyot again by letter. *See* ROA.734. But Mr. Amyot provided no further information. *See* ROA.740–41. Candel asked these questions again at the next annual general meeting on June 20, 2024. *See* ROA.884–91, 894. And again, Mr. Amyot provided no further information. *See* ROA.1108–14, 1119–21, 1124–26.

### 3.    A financial expert identifies anomalies in Esso's recent financial statements.

Because Mr. Amyot failed to substantively address Candel's questions, Candel commissioned Jean-Luc Fournier—a financial expert registered with France's highest court (the *Cour de Cassation* or "French Supreme Court")—to produce a report on Esso's finances. *See* ROA.780. In an opinion dated July 26, 2024, Mr. Fournier found numerous anomalies suggesting that Esso's business has not been carried out for

the company's own benefit or for the benefit of all shareholders, but rather for the benefit of its parent company, ExxonMobil. *See generally* ROA.773–801.

Overall, Mr. Fournier's report suggests that the anomalies he identified have undermined Esso's financial results and artificially reduced Esso's distributions to all shareholders. He stated that further explanation from Esso was required to address these anomalies, particularly in terms of transfer pricing policies. *See* ROA.779. Candel has yet to obtain clear explanations for these troubling anomalies, despite several attempts. *See generally* ROA.926–52 (Esso's Board of Directors' responses to questions, dated June 20, 2024), ROA.980–1005 (minutes of Esso's annual general meeting of June 22, 2022, including Esso's bylaws), ROA.1075–1142 (Bailiff's Report of June 20, 2024).

### 4.    Candel seeks answers in the French courts.

Given Esso's and Mr. Amyot's refusal to answer Candel's questions, Candel commenced a proceeding in the Commercial Court of Nanterre in France (the "Nanterre Court") on August 8, 2024, under Article 145 of the French Code of Civil Procedure to obtain evidence from Esso for use in potential civil and criminal actions. ROA.1332, ROA.1244–65 (the

"Article 145 Application."). As the French Supreme Court had previously explained, Article 145 "enable[s] a party to discover evidence that allows it to establish a basis upon which to demonstrate and to initiate legal action or to file a complaint against a person." *See* ROA.1256 (quoting May 30, 2018 decision in case number 16-21769). Indeed, the other Esso investors that prevailed in the Versailles Court also relied on Article 145.

Candel's Article 145 Application was initially scheduled to be heard on September 5, 2024. ROA.1332. At that hearing, Mr. Victor Ranieri from the French law firm Fidal appeared as counsel to the three Respondents to the Article 145 Application: Esso, Mr. Amyot, and Jean-Claude Marcelin, Esso's Chief Financial Officer. ROA.1332. The Nanterre Court adjourned the hearing to October 3, 2024. ROA.1332.

Shortly after the initial hearing, however, the French Supreme Court reversed the Versailles Court's Decision that granted the Article 145 application by other Esso minority shareholders. Without disputing the Versailles Court's substantive concerns about Esso's related-party agreements, the French Supreme Court issued two decisions finding, respectively, that the Versailles Court correctly denied the shareholders' request for certain contracts, *see* ROA.1286, but that a different French

9

law applied to the shareholders' information request and thus relief could not be granted under Article 145, *see* ROA.1275. On remand, the Versailles Court will determine whether the other Esso shareholders are entitled to the appointment of an expert under article L225-231 of the French Commercial Code. *See* ROA.1275. Considering the French Supreme Court's ruling, Candel withdrew its own Article 145 Application on September 17, 2024. *See* ROA.1333.

### 5. Candel seeks relief in the French courts in the French Proceeding.

After withdrawing the Article 145 Application, on October 15, 2024, Candel requested a meeting with the President of the Nanterre Court to seek the appointment of an *ad hoc* representative of Esso. ROA.1330. Under French law, an *ad hoc* representative should be appointed if there is a conflict of interest between a company and its legal representative, which is the case here because Mr. Amyot is a current director of Esso. *See* ROA.1329–30. On October 29, 2024, the President of the Nanterre Court issued an order explaining that the power to appoint an *ad hoc* representative lies with the tribunal in which the civil action is filed. *See* ROA.1342–43.

Candel thus commenced the French Proceeding on November 7, 2024, seeking to hold Mr. Amyot responsible for the damages he caused to Esso due to his mismanagement. ROA.1330 The French Application also seeks the appointment of an *ad hoc* representative. ROA.1330.

As explained further in the French Application, French law provides that minority shareholders like Candel can commence an action to hold directors and officers liable for violations of law and for mismanagement. *See* ROA.1382–83. The French Proceeding thus asserts two claims against Mr. Amyot. First, Article L225-252 allows a shareholder like Candel to "bring a corporate action for damages against the directors or the Chief Executive Officer" of a French company. ROA.1334. Second, Article L225-251 provides a cause of action for a director's or chief executive officer's mismanagement and violations of law. ROA.1333–34. Candel alleges that Mr. Amyot violated Esso's minority shareholders' right to information under Articles L225-38 and 225-40 of the French Commercial Code and under Article 23.5 of Esso's articles of association. *See* ROA.1384–87.

In summary, Candel alleges in the French Proceeding that Mr. Amyot, Esso's Chairman and CEO, was responsible for the anomalies

11

found by Mr. Fournier, and Candel further asserts that Mr. Amyot failed to justify such actions or to provide proper responses to the questions raised by shareholders. *See* ROA.1377–80, ROA.1387–88.

## B.    Procedural History

On November 12, 2024, in furtherance of the French Proceeding, Candel filed the underlying Application *ex parte* and sought an order from the district court that would authorize Candel to serve the proposed subpoenas on ExxonMobil to obtain discovery for use in the French Proceeding (the "Subpoenas"). ROA.2017. In particular, the Subpoenas sought documents concerning ExxonMobil's transfer pricing policies and Esso's agreements with ExxonMobil affiliates, *see* ROA.1436–43, as well as a limited deposition of a corporate representative of ExxonMobil regarding these topics. *See* ROA.1428–33.

### 1.    The district court grants the Application *ex parte* and preserves ExxonMobil's right to move to quash.

The Application was filed *ex parte* in the first instance to ensure an orderly and efficient process for the district court to resolve any objections, consistent with this Court's precedent. *See Banca Pueyo SA v. Lone Star Fund IX (US), LP*, 55 F.4th 469, 474 (5th Cir. 2022). The court

held an *ex parte* hearing on December 13, 2024, ROA.3, and later that day entered an order granting the Application and requiring any motion to quash by ExxonMobil to be filed within thirty days of service of the Subpoenas. ROA.1416–17. On January 6, 2025, Candel served ExxonMobil with the approved Subpoenas. ROA.1446.[2]

### 2. ExxonMobil rebuffs Candel's attempts to meet and confer regarding any objections to the scope of the discovery sought.

Eight days after Candel served the Subpoenas, on Tuesday, January 14, 2025, ExxonMobil contacted Candel "request[ing] a time to confer regarding a briefing schedule in connection with ExxonMobil's motion to quash" and indicating that ExxonMobil "plan[ned] to request an extension of the Court's deadline by which ExxonMobil must file its motion to quash." ROA.1789–90.

---

2. The Application and supporting papers were originally filed in hard copy with the Clerk of Court, and the action was assigned the case number 24-mc-1891. ROA.1418. The action was subsequently assigned a new case number, 4:24-mc-01948, but the district court's electronic docket under the new number did not include all the papers originally filed with the Application. ROA.1418. Accordingly, Candel submitted such papers electronically on December 30, 2024, to ensure completeness of the record. ROA.1418–18.

The parties spoke by videoconference the next day, Wednesday, January 15, and two days later, on Friday, January 17, Candel consented to a two-week extension of ExxonMobil's deadline to file its Motion to Quash. ROA.1786–87. Candel also explained on January 17:

> Further to our call Wednesday, we remain available at your convenience to continue our discussion to see if there is a way to resolve any reasonable concerns that Exxon[Mobil] may have about the scope of discovery on a consensual basis. We hope that, once you've reviewed the application and the subpoena, we can come to an agreement that obviates the need for the Court's further involvement.

ROA.1786. In response later that day, ExxonMobil requested an additional two days for its deadline and indicated it would explore "a potential resolution to avoid further Court involvement." ROA.1786.

Over two weeks later, after the parties had filed a joint stipulation to extend ExxonMobil's deadline, Candel—having heard nothing from ExxonMobil regarding a meet and confer on the scope of discovery requested—inquired on February 3, 2025: "would it be helpful to schedule a call to see if we can resolve this without motion practice?" ROA.1783. ExxonMobil filed its Motion to Quash eighteen days later on February 21. ROA.1453–83. Candel filed its opposition on March 14, ROA.1659–89, and ExxonMobil filed its reply on March 21. ROA.1854–65.

14

### 3. The district court orally grants ExxonMobil's Motion to Quash after a hearing.

On May 13, 2025, the district court conducted a hearing via telephone conference on ExxonMobil's Motion to Quash. ROA.1981–2016. The court did not receive additional evidence, but it did hear argument from counsel. At the conclusion of the hearing, the court ruled orally:

> I'm going to grant the motion to quash. I do think that under the [*Intel*] factors the balance of authority cuts sharply toward Exxon. Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign tribunal. I don't think the tribunal needs or would be receptive to help from a Texas court. I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on; and I think the request is way, way too broad and intrusive and burdensome. So I'm going to grant the motion to quash and will not proceed further here.

ROA.2007–08.

### 4. Candel moves for reconsideration after ExxonMobil announces its intent to sell its controlling stake in Esso, but the district court denies reconsideration and enters its Final Judgment.

On May 28, 2025, less than two weeks after the district court orally granted ExxonMobil's Motion to Quash, ExxonMobil announced in a press release that it intended to sell its controlling interest in Esso. ROA.1884–86. Based on the press release, which postdated the court's

15

May 13, 2025 ruling, Candel moved the court to reconsider its oral ruling granting ExxonMobil's Motion to Quash. ROA.1873–82.

On July 24, 2025, the court denied Candel's Motion for Reconsideration in a three-page order. ROA.1968–70. Also on July 24, 2025, the district court entered its Final Judgment. ROA.1971. On August 21, 2025, Candel timely noticed this appeal. ROA.1972.

## SUMMARY OF THE ARGUMENT

A district court's review of an application for discovery under 28 U.S.C. § 1782 proceeds in two steps: The court must first determine whether the statutory requirements are satisfied. If so, the court then decides whether to exercise its discretion to order discovery.

As to the statutory requirements, § 1782(a) authorizes a district court to order a person who "resides or is found" within its district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal" when such discovery is requested by an "interested person." 28 U.S.C. § 1782(a). Here, ExxonMobil has never disputed the statutory requirements are satisfied: (1) Candel is "interested" in the French Proceeding; (2) ExxonMobil is within the Southern District of Texas; and (3) the

16

discovery Candel seeks from ExxonMobil by its Application would be "for use" in the French Proceeding. This appeal concerns only the second step of the § 1782 inquiry.

At that step, in determining whether to grant § 1782 discovery when the statutory requirements are met, a district court should consider the four discretionary *Intel* factors. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 n.3 (5th Cir. 2010). Whether the court ultimately permits or denies § 1782 discovery after weighing the *Intel* factors, the court "must offer reasoning" and "explain" its decision. *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758–59 (5th Cir. 2024). Failure to do so warrants vacatur and remand. *Id.* at 759.

Below is the district court's complete application of the *Intel* factors:

> I'm going to grant the motion to quash. I do think that under the [*Intel*] factors the balance of authority cuts sharply toward Exxon. Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign tribunal. I don't think the tribunal needs or would be receptive to help from a Texas court. I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on; and I think the request is way, way too broad and intrusive and burdensome. So I'm going to grant the motion to quash and will not proceed further here.

ROA.2007–08. The ruling is little more than a recitation of the *Intel* factors. It does not explain *why* the court found the factors favored

ExxonMobil. This Court can and should vacate and remand solely on this basis.

Further scrutiny inspires no more confidence. For example, that ExxonMobil is not a participant in the French Proceeding, as the district court noted, weighs in favor of discovery under the first *Intel* factor. On the second *Intel* factor, other U.S. federal courts have routinely found French courts receptive to § 1782 discovery, and the district court mentions no "authoritative proof" the French court here would reject the specific requested discovery. Nor does the district court identify under the third *Intel* factor how Candel has purported to "circumvent[]" French law by seeking the discovery, especially when such *circumvention* would require an act committed intentionally rather than "perhaps unintentionally." Finally, the court made no effort to narrow the requested discovery rather than quashing the Subpoenas outright despite numerous entreaties by Candel and as contemplated by this Court's precedent.

The district court's May 13, 2025 ruling lacks a reasoned explanation, which is required under controlling authority. Nor is there

any other basis in the record on which the decision can be affirmed. This Court should vacate and remand.

## ARGUMENT

### I. The district court's grant of ExxonMobil's Motion to Quash and denial of § 1782 discovery without providing reasoning contravenes this Court's precedent.

This Court has recognized for decades, if not longer, that a district court must explain its reasons for quashing a subpoena in ordinary civil litigation. And the Court has since made clear that rule extends with full force to subpoenas issued pursuant to applications under 28 U.S.C. § 1782. Indeed, the rule is especially important in the § 1782 context, where there are no subsequent motions to dismiss, motions for summary judgment, or trials before a judge or jury. Granting a motion to quash § 1782 discovery ends the case, and only by explaining such a decision can a district court enable this Court to effectively review it.

Here, the district court failed to explain its decision to grant ExxonMobil's Motion to Quash. Its summary incantation of the *Intel* factors at the May 13, 2025 hearing does nothing to guide this Court's review on appeal. Consistent with prior precedent, the Court should vacate and remand with instructions.

## A.    A district court must explain its decision to deny a § 1782 application or quash a subpoena.

Last August, this Court reiterated: "We have previously held that a district court must offer reasoning whenever it *grants* a motion to quash § 1782 discovery." *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758 (5th Cir. 2024); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 320 (5th Cir. 2015) (per curiam) (unpublished) (same). As the Court explained in both *Paramo* and *Bravo Express*, the rule is well grounded in Circuit precedent.[3]

For example, in *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 555 (5th Cir. 2012) (per curiam), "the party from whom discovery was sought under § 1782(a) filed a motion to quash the discovery subpoenas. The district court granted the motion to quash, but [this Court] vacated the order, holding that 'the district court . . . abused its discretion by providing no reasons for its decision[.]'" *Bravo Express*, 613 F. App'x at 324 (quoting *Texas Keystone*, 694 F.3d at 555).

---

3. The *Bravo Express* opinion was not published, but it relied squarely on prior precedent of the Court. *See* 5th Cir. R. 47.5.1 (counseling against "publication of opinions that merely decide particular cases on the basis of well-settled principles of law").

Additionally, in *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004), this Court explained that "'modification of a subpoena is preferable to quashing it outright,' and a district court abuses its discretion when it does not explain its reasoning, does not allow the applicant an opportunity to cure any defects, and does not 'attempt to modify the subpoena to cure any overbreadth.'" *Bravo Express*, 613 F. App'x at 325 (quoting *Wiwa*, 392 F.3d at 818–19).[4]

Based on the foregoing precedent, this Court vacated and remanded in *Bravo Express* where "[t]he district court mentioned [the *Intel*] factors during the motion hearing, but the district court's order [did] not contain any explanation of why it denied the [§ 1782] application." 613 F. App'x at 324. *Paramo* applied the same precedent to the inverse situation, concluding that "the district court's order denying [respondent's] motion to quash is plainly deficient because it does not meaningfully engage with any of part of the § 1782 inquiry." 114 F.4th at 762. There, the court's order denying the motion to quash did "not engage at all beyond a

---

4. The *Bravo Express* panel explained that, although "*Wiwa* did not directly implicate § 1782(a)," the Court "relied on *Wiwa* in *Texas Keystone* for the proposition that a district court must provide reasoning for its decision to quash a subpoena." *Bravo Express*, 613 F. App'x at 324 n.7.

barebones reference to 'the Motion, the Response, the record and the applicable law,'" and the "initial order granting § 1782 assistance . . . did no more than recite the applicable factors." *Id.*

When a district court fails to explain its decision to grant a motion to quash and deny § 1782 discovery, this Court may vacate and remand "to the district court with instructions to provide oral or written reasons for its decision, should it deny the [§ 1782] application." *Bravo Express*, 613 F. App'x at 325; *see also Texas Keystone*, 694 F.3d at 556.

**B.    The district court failed to explain its decision to grant ExxonMobil's Motion to Quash, hindering this Court's ability to effectively review the decision on appeal.**

Here, the district court initially granted Candel's Application in a written order on December 13, 2024. ROA.1416–17. Thereafter, the court granted ExxonMobil's Motion to Quash after a May 13, 2025 hearing. ROA.2007–08. At the hearing, the court found that "under the [*Intel*] factors the balance of authority cuts sharply toward Exxon," but the court then offered minimal explanation or reasoning to illuminate its decision. ROA.2007–08. The court did not issue a written decision on the Motion to Quash.

As to the first *Intel* factor, the court stated at the May 13 hearing: "Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign tribunal." ROA.2007. All that can be reliably ascertained from the first part of this sentence is that ExxonMobil is not a participant in the French Proceeding, which would weigh *in favor* of granting § 1782 discovery on the first *Intel* factor. *See Intel*, 542 U.S. 241, 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

The remainder of the sentence is ambiguous at best. It is unclear how the "integrity" of the foreign tribunal is relevant to the first *Intel* factor; indeed, the word "integrity" appears nowhere in the *Intel* decision itself, nor does it appear in the parties' argument or briefs on the Motion to Quash. *Cf. Bravo Express*, 613 F. App'x at 324 ("[T]he hazards of relying on a motion hearing transcript are brought into sharp focus by this case."). And even if the French court's "integrity" were relevant, the fact that the district court had "no doubts about" it does not demonstrate

23

that the first *Intel* factor weighs against granting § 1782 discovery generally, let alone here specifically.

The district court's recitations of the second, third, and fourth *Intel* factors are easier to understand but no more informative. As to the second factor, the court observed: "I don't think the tribunal needs or would be receptive to help from a Texas court." ROA.2007. Regarding the third *Intel* factor, the district court offered: "I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on[.]" ROA.2007–08. Finally, on the fourth *Intel* factor, the district court opined: "I think the request is way, way too broad and intrusive and burdensome." ROA.2008. These are all conclusions, and there are no supporting reasons.

The district court's summary ruling here is analogous to the rulings this Court reviewed and deemed deficient in both *Bravo Express* and *Paramo*. In *Bravo Express*, "[t]he district court mentioned [the *Intel*] factors during the motion hearing, but the district court's order [did] not contain any explanation of why it denied the application." *See* 613 F. App'x at 324. Similarly, the district court here recited each *Intel* factor, pronounced that they favored ExxonMobil, and granted the Motion to

Quash, but the court's oral ruling did not elaborate *why* the factors favored ExxonMobil, and it issued no written decision on the Motion to Quash. In *Paramo*, the district court's ruling did "not *meaningfully* engage with any of part of the § 1782 inquiry." 114 F.4th at 762 (emphasis added). The district court's oral ruling here likewise reflects no effort to "meaningfully engage" and is more akin to the "barebones reference" to the record and applicable law rejected in *Paramo*. *See* 114 F.4th at 762.[5]

The upshot is that the district court's single-paragraph oral ruling—containing conclusions but no reasoning—fails to facilitate this Court's effective appellate review. *See Paramo*, 114 F.4th at 761 ("[W]e struggle to discern the basis of the district court's order here, which hamstrings our ability to review its ruling." (footnote omitted)).[6] This is

---

5. Although the district court here asked a handful of questions during the May 13, 2025 hearing before delivering its ruling, "an explanation" for the court's ruling "must be generated by the court, not inferred by the appellate court from the submissions of the parties or from the district court's questions and remarks." *Bravo Express*, 613 F. App'x at 324 (citation modified) (citing *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290–91 (5th Cir. 2015)).

6. On remand in *Paramo*, the district court issued a detailed opinion denying the respondent's superseding motion to quash. *See* No. 4:23-MC-01188, 2024 WL 4905981 (S.D. Tex. Nov. 27, 2024). This Court affirmed that "careful" decision on appeal this past August. *See* No. 24-20542, 2025 WL 2305399, at *1 (5th Cir. Aug. 11, 2025) (per curiam) (unpublished) ("[T]he [district] court assiduously followed the prior panel's mandate by

a bedrock principle obviously not limited to § 1782 actions. For example, in other contexts, this Court has instructed: "The findings and conclusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied." *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 240 (5th Cir. 2014) (quoting *Davis v. E. Baton Rouge Parish Sch. Bd.*, 570 F.2d 1260, 1263–64 (5th Cir. 1978)); *see also Chandler v. City of Dallas*, 958 F.2d 85, 90 (5th Cir. 1992) ("The findings of fact and conclusions of law play a duet; the district court tunes one to the other. . . . When we hear a blank tape, however, we cannot evaluate the tenor of the melody.").

Put succinctly, this Court's "precedent requires district courts to provide *reasoning* when they decline to issue a subpoena or when they quash a subpoena." *Bravo Express*, 613 F. App'x at 320 (emphasis added). Because the district court's May 13, 2025 ruling here does not "meaningfully engage" with the § 1782 analysis and fails to facilitate effective appellate review, the court abused its discretion in granting the

---

conducting further proceedings on Paramo's motion to quash and then explaining its ruling in a comprehensive opinion. By doing so, the court 'implement[ed] both the letter and the spirit of the [prior panel's] mandate.'" (quoting *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004))).

Motion to Quash. *See Paramo*, 114 F.4th at 760. This Court should vacate and remand, and it need not venture any further to resolve this appeal. *Id.* ("Because this determination is dispositive, we do not reach [appellant's] other asserted grounds for relief."); *PDK Lab'ys Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.").

## II. The district court abused its discretion in concluding the *Intel* factors cut against permitting § 1782 discovery and in favor of granting ExxonMobil's Motion to Quash.

Given the district court's lack of reasoning, this Court need not wade deeply into the *Intel* factors or feel compelled to scour the record to decide this appeal. As the Court has remarked on numerous occasions, it is "a court of review, not of first view." *E.g.*, *Rutila v. Dep't of Transportation*, 12 F.4th 509, 511 n.3 (5th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 719 n.7 (2005)). But even if the Court were to conduct a more searching analysis, it is clear the district court erred in

its application of the *Intel* factors and that its May 13, 2025 ruling cannot be upheld.

In *Intel*, the Supreme Court "suggested that district courts should consider" four factors in deciding whether to grant § 1782 discovery. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 n.3 (5th Cir. 2010) (listing *Intel* factors) (citing *Intel*, 542 U.S. at 264–65). Here, the district court found all four *Intel* factors weighed against granting Candel's Application for § 1782 discovery and in favor of granting ExxonMobil's Motion to Quash. As explained below, the court erred with respect to each of the four factors, and the record does not support affirmance on alternative grounds.[7]

### A. The district court incorrectly concluded under the second *Intel* factor that the French courts would not be receptive to the discovery sought.

Under the second *Intel* factor, a district court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance[.]" *Ecuadorian*

---

7. Candel addresses the second *Intel* factor first, followed by the third, fourth, and first factors.

*Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 n.3 (5th Cir. 2010) (quoting *Intel*, 542 U.S. at 264–65). More specifically, for a respondent to demonstrate that the second *Intel* factor weighs against § 1782 discovery, it must provide "authoritative proof" that the foreign tribunal would reject the discovery, a standard recognized by this Court, various district courts within the Circuit, and other courts across the country. Here, the district court identified no such authoritative proof, and the record does not disclose any.

### 1. A party resisting § 1782 discovery must provide "authoritative proof" that the foreign tribunal would reject the requested evidence.

This Court has explained that, "to avoid 'speculative forays into legal territories unfamiliar to federal judges,' parties must provide 'authoritative proof' that a foreign tribunal would reject evidence[.]" *Ecuadorian Plaintiffs*, 619 F.3d at 378 (citation modified). Put differently, the party resisting § 1782 discovery must identify a "'judicial, executive or legislative declaration' that clearly demonstrates that allowing discovery . . . would offend [the foreign country's] judicial norms." *See id.*

29

The "authoritative proof" standard traces its roots to *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995), where the Second Circuit addressed "the question of the degree to which federal district courts, in deciding whether to order discovery under 28 U.S.C. § 1782(a) in aid of a foreign litigation, should delve into the mysteries of foreign law." *Id.* at 1096. *Euromepa* predated the Supreme Court's decision in *Intel*, but *Euromepa* remains good Second Circuit law. *See, e.g.*, *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

District courts within this Circuit relied on *Euromepa*'s "authoritative proof" standard prior to *Intel*.[8] And, more important, they have continued to do so since this Court's decision in *Ecuadorian Plaintiffs* expressly adopted *Euromepa*'s "authoritative proof" standard. *See, e.g.*, *In re Ord. Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for*

---

8. *See In re Application of Geert Duizendstraal*, No. CIV.A. 3:95-MC-150X, 1996 WL 772508, at *1 (N.D. Tex. Mar. 4, 1996) ("In determining whether the information sought is discoverable, the Court should consider only authoritative proof that a foreign tribunal would reject evidence obtained under the statute. No such authoritative proof has been presented to this Court."); *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 196 (S.D. Tex. 1995) ("In the absence of any Fifth Circuit authority on point, this court finds the Second Circuit's reasoning in *Malev*, *Gianoli*, and *Euromepa* to be persuasive.").

*Use in Foreign Proc.*, No. CV 4:23-MC-96, 2025 WL 714374, at \*5 (E.D. Tex. Mar. 5, 2025) ("The second *Intel* factor instructs the Court to deny discovery due to the foreign tribunal's lack of receptiveness only when the party resisting discovery provides 'authoritative proof that a foreign tribunal would reject evidence' obtained via § 1782.'") (quoting *Ecuadorian Plaintiffs*, 619 F.3d at 378)); *In re Empresa Publica de Hidrocarburos del Ecuador - EP Petroecuador v. WorleyParsons Int'l, Inc.*, No. 4:19-MC-2534, 2020 WL 13412872, at \*4 (S.D. Tex. Apr. 13, 2020) (". . . Respondent has not provided any 'authoritative proof' that Ecuadorian law would preclude Applicant from using discovery obtained with the aid of § 1782(a)." (quoting *Ecuadorian Plaintiffs*, 619 F.3d at 378)).[9]

---

9.   *See also In re Solines*, No. MC 18-3680, 2018 WL 2225134, at \*2 n.4 (E.D. La. Apr. 30, 2018) ("To turn [the foreign-receptivity] factor in its favor, the burden would be on [respondent] to submit 'authoritative proof' that the Ecuadorian court would reject this evidence."), *report and recommendation adopted*, No. CV 18-3680, 2018 WL 2219357 (E.D. La. May 15, 2018).

### 2. The district court did not identify any "authoritative proof" the evidence sought would be rejected in the French Proceeding, and the record does not contain such proof.

Here, ExxonMobil does not dispute the "authoritative proof" standard applies. *See* ROA.1467, ROA.1476, ROA.1862. But the district court identified no such proof that the French courts would reject the discovery sought by Candel.

All the district court found after briefing and argument of ExxonMobil's Motion to Quash was: "I don't think the tribunal needs or would be receptive to help from a Texas court." ROA.2007. The court's failure to apply the correct standard is legal error, and "[a] decision premised on an error of law constitutes an abuse of discretion." *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015) (citation omitted); *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 157 (2d Cir. 2022) (vacating and remanding district court's denial of § 1782 discovery where "the district court based its decision on legal error, and thereby exceeded the bounds of its discretion").

Further inquiry confirms the foregoing. To the extent the district court's conclusion on this factor suggests that French courts *generally* are not receptive to § 1782 discovery from U.S. courts, that is incorrect.

32

Numerous courts have authorized § 1782 discovery for use in French proceedings based in part on the general principle that "French Courts are receptive to mutual judicial cooperation in civil matters." *See, e.g.*, *In re MacDonell*, No. 2:20-CV-1332 KJM DB, 2020 WL 3961958, at *2 (E.D. Cal. July 13, 2020) (citation omitted); *In re Valitus, Ltd.*, No. CIV 20-MC-91133-FDS, 2020 WL 6395591, at *7 (D. Mass. Nov. 2, 2020) ("The French courts appear to be receptive to U.S. assistance.").[10] And other courts have authorized § 1782 discovery for use in French proceedings in the absence of authoritative proof that the French court would reject the *specific* evidence sought.

For example, in *In re Consellior SAS, Kerfraval, Ass'n de Documentation Pour L'industrie Nationale*, a district court authorized § 1782 discovery on facts materially indistinguishable from those here. *See* No. 13 MC 34, 2013 WL 5517925, at *1–2 (D. Conn. Oct. 2, 2013). Like Candel, the applicants in *Consellior* were "minority shareholders"

---

10. *See also In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, No. 13-MC-0266, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) (authorizing § 1782 discovery for use in French and English criminal proceedings in part because "the Court is unaware of any policy observed by the French and English courts that would limit 'the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'").

33

in a French company, i.e., Baccarat. *See id.* at *1. Like ExxonMobil vis-à-vis Esso, the respondents in *Consellior* were the controlling shareholders of Baccarat. *See id.*

The applicants in *Consellior*—like Candel here—sought evidence in the United States from the controlling shareholders for use in a French proceeding challenging whether Baccarat had engaged in a "transaction was not in the best interests of Baccarat's common shareholders." *See id.* And even though respondents in *Consellior* maintained "there was a likelihood that none of the documents could be used in the French action," *id.* at *1, the court found "no indication that the French court would not be receptive to the grant of the instant application to obtain materials that could assist in the resolution of the action pending in France." *Id.* at *2. The same could be said here.[11]

Indeed, even if this Court looks past the district court's oral May 13, 2025 ruling, which Candel maintains would not be appropriate, the

---

11. *See also In re Ex Parte Application of Mentor Graphics Corp.*, No. 16-MC-80037-HRL, 2017 WL 55875, at *2 (N.D. Cal. Jan. 4, 2017) (concluding that even if—in fact, because—"the evidence sought is likely unattainable through the French courts in this proceeding, and it may be relevant to a Statute of Limitations defense," the "[second *Intel*] factor weighs in favor of permitting the discovery"(citing *London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (per curiam) (unpublished))).

record contains no "authoritative proof" that the French courts in this case would reject the specific discovery sought. The relevant French court here, the Commercial Court of Nanterre, has yet to consider any requests for discovery by Candel in that action. In briefing below, ExxonMobil relied on two French Supreme Court decisions arising in different contexts, namely a request to appoint an expert to investigate management operations and a request under a now-removed provision of Esso's articles of association. *See* ROA.1476–77. And those decisions are not even a "clear directive" against discovery within those other proceedings. *See Ecuadorian Plaintiffs*, 619 F.3d at 378–79.

To the contrary, and as Candel explained above, the French Supreme Court remanded an application under Article 145 by another shareholder of Esso (CIAM) for further proceedings under a different provision of French law. *See* ROA.1275. Such a remand is hardly the sort of "solid wall against" discovery erected by a foreign court that would weigh against discovery sought by Candel under § 1782. *See SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 594 (3d Cir. 2024). The denial of CIAM's other request, which rested solely on the grounds that CIAM's request did not

comply with Esso's articles of association, likewise does not suggest a French court would be offended by the discovery Candel seeks here. *See* ROA.1286, ROA.1589–90 (ExxonMobil translation).

Stated simply, the record reflects that the French courts have never considered whether to allow the discovery sought here in the proceeding for which Candel seeks to use it. At minimum, the record reveals nothing more than "a battle-by-affidavit of international legal experts," from which a district court should not "try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." *Euromepa*, 51 F.3d at 1099 (citation omitted). And, after all, "France can quite easily protect itself from the effects of any discovery order by the district court that inadvertently offended French practice" by refusing to consider the evidence. *Id.* at 1101 (citation omitted). In such circumstances, the second *Intel* factor does *not* weigh against § 1782 discovery, and it was error for the district court to find otherwise.

36

**B.    The district court incorrectly concluded under the third *Intel* factor that the § 1782 discovery Candel seeks conceals an attempt to circumvent French proof-gathering restrictions.**

Under the third *Intel* factor, a district court considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States[.]" *Ecuadorian Plaintiffs*, 619 F.3d at 377 n.3 (quoting *Intel*, 542 U.S. at 264–65). In other words, the court must identify a specific restriction or policy and consider whether the discovery sought obscures an intentional effort to evade that restriction. The district court here neither identified any specific restriction nor found any willful attempt to circumvent it. The court erred in finding the third *Intel* factor weighed against § 1782 discovery.

**1.    Circumvention under the third *Intel* factor requires an intentional attempt to avoid a specific foreign-proof-gathering restriction.**

This Court has not had occasion to examine the contours of the third *Intel* factor in significant depth. For example, in *Ecuadorian Plaintiffs*, the Court concluded in affirming a grant of § 1782 discovery that "the record does not clearly demonstrate that [the applicant] is attempting to evade restrictions on discovery in Ecuador." 619 F.3d at 377. Even so, the

37

language the Court used—"attempting to evade"—connotes calculated intent.

That tracks the analysis of other courts, including the Second Circuit, which recently examined the third *Intel* factor in *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136 (2d Cir. 2022). There, the court of appeals reasoned: "In the context of § 1782 and the third *Intel* factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence." *Id.* at 153. And it reiterated it has "cautioned that courts should not give undue weight to the mere absence in foreign jurisdictions of proof-gathering *mechanisms* available in the United States," because "proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that fail to *facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Id.* (citation modified).

In assessing "whether an application . . . can, as a matter of law, be said to 'circumvent'" a foreign-proof-gathering restriction "within the meaning of *Intel*," a court "must determine whether the [purported

38

restriction] is properly understood as embodying a proof-gathering restriction, or at least a policy preference for use of its processes over other means by which [a § 1782 applicant] can gather evidence in the United States." *See id.*

### 2. The district court identified no specific foreign-proof-gathering restriction and did not find that any circumvention was intentional.

Here, on the third *Intel* factor the district court found: "I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on[.]" ROA.2007–08. The court identified no specific French proof-gathering restriction and did not explain how Candel's Application "conceals an attempt to circumvent" any such proof-gathering restriction or policy of France. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). This alone was error.

Nor does "the record . . . clearly demonstrate that [Candel] is attempting to evade restrictions on discovery in [France]." *See Ecuadorian Plaintiffs*, 619 F.3d at 377. Candel has been forthright about the procedural history of the litigation in France and its attempts to obtain discovery there; counsel for ExxonMobil acknowledged at the May 13, 2025 hearing: "Your Honor, I think that that description [by Candel's

39

counsel] of what's happening in the French proceeding is accurate." ROA.1996–97.

At most, the decisions from the French courts that ExxonMobil strains to bend to its aims in the briefing below reflect "rules that fail to *facilitate* investigation of claims" by minority shareholders such as Candel that own less than 5% of Esso and not "rules akin to privileges that *prohibit* the acquisition or use of certain materials" that Candel seeks. *See VR Advisory Servs., Ltd.*, 27 F.4th at 153. On this point, it is also notable ExxonMobil has never disputed the discovery Candel seeks is "for use" in the French Proceeding. The district court abused its discretion in finding the third *Intel* factor weighs against § 1782 discovery.

**C. The district court erred under the fourth *Intel* factor by not considering Candel's offers to narrow the requested discovery to address any concerns of overbreadth, undue burden, or intrusiveness.**

Under the fourth *Intel* factor, a district court considers "whether the § 1782(a) request is 'unduly intrusive or burdensome.'" *Ecuadorian Plaintiffs*, 619 F.3d at 377 n.3 (quoting *Intel*, 542 U.S. at 264–65). Here, after serving ExxonMobil with the Subpoenas the district court expressly

authorized in its December 13, 2024 order, ROA.1416, Candel affirmatively inquired of ExxonMobil whether the parties could reach any agreement on the scope of the requested discovery. ExxonMobil declined to engage on this point. ROA.1786–90.

Candel reiterated at the May 13, 2025 hearing that, as to concerns about overbreadth, "Section 1782 decisions are consistent in holding that discovery should be trimmed rather than denied outright," ROA.1998, but the district court simply ruled: "I think the request is way, way too broad and intrusive and burdensome." ROA.2008. This was error under this Court's precedent.

"Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "This is particularly true where, as here, counsel for the applicant offers to narrow the discovery request to remedy any overbreadth." *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 325 (5th Cir. 2015) (per curiam) (unpublished).

This rule makes sense because when the parties know that a district court must try to narrow a subpoena before quashing it, they should be incentivized to reach an agreement themselves before

burdening the courts. In similar fashion, it is not uncommon for a district court to grant a § 1782 application and then direct the parties to meet and confer regarding the scope of discovery before the court undertakes the task itself. *See, e.g.*, *In re China Constr. Bank (Asia) Corp. Ltd.*, No. 23-MC-17 (JMF), 2023 WL 3791711, at *3 (S.D.N.Y. June 2, 2023) (granting § 1782 discovery and instructing: "The parties shall promptly meet and confer in an effort to narrow the scope of the subpoenas. Barring agreement, the parties shall appear for a conference with the Court" (emphasis omitted)). Such an approach promotes efficiency and preserves precious judicial resources.

Put differently, assuming a subpoena is otherwise properly issued, the notion that the recipient should not and need not negotiate the scope of the discovery at all frustrates "the just, speedy, and inexpensive determination" of the action. *See* Fed. R. Civ. P. 1. And it is inconsistent with this Court's well-settled precedent that, "[g]enerally, modification of a subpoena is preferable to quashing it outright." *See Wiwa*, 392 F.3d at 818.

Finally, the district court offered no reasoning for its conclusion that the requested discovery would be "too . . . intrusive." Although

Candel maintains ExxonMobil's concerns in this regard are overwrought, as Candel explained below, it is ready and "willing to stipulate to a reasonable confidentiality agreement," and the "French courts can impose appropriate confidentiality restrictions" on any discovery obtained. ROA.1686–87. The district court's May 13, 2025 ruling does not indicate whether it considered these points. In short, the court abused its discretion in concluding the fourth *Intel* factor weighed against discovery on grounds of overbreadth, burden, and intrusiveness.

**D.    The district court erred under the first *Intel* factor by acknowledging ExxonMobil is not a participant in the French Proceeding but nonetheless concluding that the factor weighed against § 1782 discovery.**

Under the first *Intel* factor, a district court considers "whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' since 'nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach' and therefore their evidence may be 'unobtainable absent § 1782(a) aid[.]'" *Ecuadorian Plaintiffs*, 619 F.3d at 377 n.3 (quoting *Intel*, 542 U.S. at 264–65). Here, the district court ruled: "Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign

tribunal." ROA.2007, ROA.1474 (conceding "[i]t is technically true that ExxonMobil is not a participant in the French Proceeding"), ROA.1856 (similar).

That ExxonMobil is not a participant in the French Proceeding weighs *in favor* of granting § 1782 discovery, not against. *See Ecuadorian Plaintiffs*, 619 F.3d at 377 n.3. The district court's summary finding to the contrary was error, and this Court need look no further.

The district court also did not find, and ExxonMobil did not argue below, that ExxonMobil as a nonparticipant is still within the "jurisdictional reach" of the French courts. *See Intel*, 542 U.S. at 264. ExxonMobil instead contended below that the *documents* Candel seeks would also be within the possession, custody, or control of Esso, which is within the jurisdictional reach of the French courts. *See* ROA.1856.

But Candel does not concede that point, as its offers to narrow the Subpoenas make clear it seeks documents specifically within the possession of ExxonMobil. *See, e.g.*, ROA.1993–98, ROA.2007. Nor did the district court adopt ExxonMobil's position in this respect,[12] which would

---

12. Again, as noted above, "an explanation" for the court's ruling "must be generated by the court, not inferred by the appellate court from the submissions of the parties or from the district court's questions and

implicate a foreign-exhaustion requirement for § 1782 applicants that other circuit courts of appeals have uniformly rejected. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 155 (2d Cir. 2022); *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 345 (8th Cir. 2012); *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998); *see also Rothe v. Aballi*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sept. 27, 2021) (per curiam) (unpublished).[13] The district court's one-sentence finding on the first *Intel* factor cannot be sustained.

## CONCLUSION

For all the foregoing reasons, Candel respectfully requests that this Court vacate the district court's May 13, 2025 ruling and Final Judgment and remand with instructions.

---

remarks." *Bravo Express*, 613 F. App'x at 324 (citation modified) (citing *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290–91 (5th Cir. 2015)).

13. District courts within the Circuit have followed suit. *See, e.g.*, *In re B&C Holding GmbH*, No. CV 23-365-JWD-EWD, 2023 WL 8171733, at *7 (M.D. La. Nov. 24, 2023) (". . . [Respondent] has not identified, nor has the Court's own research located, any authority that suggests § 1782 contains an exhaustion requirement." (citation omitted)).

Dated: November 3, 2025                    Respectfully submitted,

                                           _/s/ Gabriela M. Ruiz_____
                                           Gabriela M. Ruiz
                                           KING & RUIZ LLP
                                           2 Biscayne Blvd., Suite 3200
                                           Miami, Florida 33131
                                           Tel.: (305) 395-4984
                                           gruiz@kingruiz.com

                                           Stephen R. Halpin III
                                           KING & RUIZ LLP
                                           45 Rockefeller Plaza, 20th Floor
                                           New York, New York 10111
                                           Tel.: (212) 500-6499
                                           shalpin@kingruiz.com

                                           *Attorneys for Appellant*
                                           *Candel & Partners SAS*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed on this 3rd day of November, 2025, using the Court's CM/ECF system, which will serve the foregoing on all parties through counsel of record.

 */s/ Gabriela M. Ruiz*
Gabriela M. Ruiz

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Rules 32(a)(5), 32(a)(6), and 28.1(e)(2)(B) of the Federal Rules of Appellate Procedure because the brief is proportionally spaced using 14-point Century Schoolbook font and contains 9,106 words.

November 3, 2025

_/s/ Gabriela M. Ruiz_
Gabriela M. Ruiz