No. 25-20366

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CANDEL & PARTNERS SAS,
Movant-Appellant,

v.

EXXON MOBIL CORPORATION,
Respondent-Appellee

_____

**BRIEF OF APPELLEE**

_____

|  |  |
|---|---|
|  | Santosh Aravind<br>Rachel Stephenson<br>SCOTT DOUGLASS<br>    & McCONNICO LLP<br>303 Colorado Street, Suite 2400<br>Austin, TX  78701-3234<br>(512) 495-6300 – Telephone<br>(512) 495-6399 – Facsimile<br><br>ATTORNEYS FOR<br>EXXON MOBIL<br>CORPORATION |

No. 25-20366

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CANDEL & PARTNERS SAS,
Movant-Appellant,

v.

EXXON MOBIL CORPORATION,
Respondent-Appellee

_____

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Movant-Appellant: | Appellate Counsel: |
|---|---|
| Candel & Partners SAS. | Gabriela M. Ruiz<br>Stephen R. Halpin III<br>KING & RUIZ, LLP<br><br>Trial Counsel<br><br>Dennis C. Reich<br>Joshua H. Bauer<br>REICH AND BINSTOCK, LLP |

4899-4094-5527

| | Jonathan D. Cogan<br>Darryl G. Stein<br>KOBRE & KIM LLP |
|---|---|
| <u>Respondent-Appellee</u><br><br>Exxon Mobil Corporation ("ExxonMobil"). ExxonMobil has no parent corporation, and no publicly held company owns 10% or more of its stock. | <u>Trial and Appellate Counsel</u><br><br>Santosh Aravind<br>Rachel Stephenson<br>SCOTT DOUGLASS & MCCONNICO, LLP |

Esso S.A.F. – Subsidiary of ExxonMobil. Candel is a minority shareholder of Esso.

Charles Amyot – Chief Executive Officer and Chairman of Esso.

North Atlantic France SAS – Company that recently acquired a controlling stake in Esso from ExxonMobil France.

Allan Green – Owner of Candel.

Benjamin Tolub – Chief Executive Officer of Candel.

December 17, 2025

*/s/ Santosh Aravind*
Santosh Aravind
Attorney of record for Appellee

4899-4094-5527

## STATEMENT REGARDING ORAL ARGUMENT

Appellee ExxonMobil respectfully submits that no oral argument is needed for this Court to affirm the district court's holding that the four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004), all favor quashing Candel's Subpoena and application pursuant to 28 U.S.C. § 1782. The legal arguments and undisputed facts are adequately presented in the briefs and record.

4899-4094-5527

## TABLE OF CONTENTS

Certificate of Interested Parties......................................................................... ii

Statement Regarding Oral Argument ............................................................. iv

Table of Authorities..................................................................................... vii

Statement of Issues ........................................................................................1

Statement of the Case....................................................................................2

    A.    Parties.................................................................................................2

    B.    Candel and other minority shareholders try and fail to obtain confidential documents in France. ...................................4

    C.    Candel tries a new tactic and commences a lawsuit against Esso's CEO in France.......................................................7

    D.    Candel files an *ex parte* application for the Subpoena in U.S. federal court. ........................................................................8

    E.    ExxonMobil moves to quash the Subpoena and the district court quashes the Subpoena following a hearing. ...................................................................................................10

    F.    Candel Moves to Reconsider.......................................................12

Summary of Argument.................................................................................14

Argument.....................................................................................................15

    A.    Standard of review........................................................................15

    B.    The district court's reasoning was sufficient.............................16

    C.    The district court did not abuse its discretion in granting the Motion to Quash.................................................................21

        1.    The district court did not abuse its discretion in finding that the Subpoena is facially overbroad and declining to narrow it. ..............................................24

2.   The potentially relevant documents that relate to Esso are within France's jurisdictional reach................34

3.   The French court has conclusively demonstrated that it would reject the evidence sought. ........................37

4.   Candel seeks to circumvent French proof-gathering restrictions. ......................................................44

Conclusion and Prayer .......................................................................47

Certificate of Compliance.................................................................50

Certificate of Service .........................................................................50

vi

# TABLE OF AUTHORITIES

**Cases**

*Aguila Energia e Participcoes Ltda. v. JPMorgan Chase & Co.,*
2024 WL 3373416 (S.D.N.Y. July 10, 2024) ....................................28

*Andover Healthcare, Inc. v. 3M Co.,*
817 F.3d 621 (8th Cir. 2016) .................................................33

*Anthony v. Canal Indem. Co.,*
347 Fed. Appx. 110 (5th Cir. 2009) ......................................21

*Banco Mercantil de Norte, S.A. v. Paramo,*
114 F.4th 757 (5th Cir. 2024) ............................... 16, 17, 19, 20

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,*
613 Fed. Appx. 319 (5th Cir. 2015) .............................. passim

*CFE Int'l LLC v. Antaeus Group LLC,*
2022 WL 17731821 (W.D. Tex. Aug. 26, 2022),
*report and recommendation adopted*, 2022 WL 19569581
(W.D. Tex. Dec. 6, 2022)............................................ 25, 31, 45

*Danzy v. IATSE Local 22,*
2021 WL 6753479 (D.D.C. Sept. 24, 2021) .........................31

*Ecuadorian Plaintiffs v. Chevron Corp.,*
619 F.3d 373 (5th Cir. 2010) ...................................... 35, 37, 43

*Fagan v. J.P. Morgan Chase Bank,*
2019 WL 984281 (W.D. Tex. Feb. 28, 2019) ......................26

*Gift v. Anadarko Petroleum Corp. Change of Control Severance
Plan,*
2024 WL 4689051 (5th Cir. Nov. 6, 2024)..........................44

*Goh v. Baldor Elec. Co.,*
1999 WL 20943 (N.D. Tex. Jan. 13, 1999) .........................27

*Gov't of Ghana v. ProEnergy Services, LLC,*
677 F.3d 340 (8th Cir. 2012) .................................................37

4899-4094-5527

*In re Associacao dos Profissionais dos Correios*,
    2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024)............................ passim

*In re Eli Lilly & Co.*,
    37 F.4th 160 (4th Cir. 2022)...............................................29

*In re Ex Parte Application of Eni S.p.A. for an Order Pursuant to
    28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use
    in Foreign Proceedings*,
    2021 WL 1063390 (D. Del. Mar. 19, 2021) ........................................44

*In re Ex Parte Application of Porsche Automobil Holding SE*,
    2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ........................................34

*In re Frasers Grp. PLC*,
    2024 WL 139488 (D.N.J. Jan. 12, 2024) ............................................45

*In re Jagodzinski*,
    2019 WL 1112389 (S.D. Fla. Jan. 15, 2019), *report and
    recommendation adopted*, 2019 WL 2255564 (S.D. Fla.
    Apr. 8, 2019) ......................................................................45

*In re Mun*,
    2022 WL 17718815 (S.D.N.Y. Dec. 15, 2022)...................................27

*In re Ord. Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for
    Use in Foreign Proc.*,
    2025 WL 714374 (E.D. Tex. Mar. 5, 2025) ........................................43

*In re Request for Assistance for Ministry of Legal Affairs of
    Trinidad and Tobago*,
    848 F.2d 1151 (11th Cir. 1988), *abrogated on other grounds
    by Intel Corp.*, 542 U.S. 241 ...............................................26

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................ passim

*Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*,
    362 F.3d 401 (7th Cir. 2004) ...............................................47

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018)..................................................................34

*LEG Q LLC v. RSR Corp.*,
    2017 WL 3780213 (N.D. Tex. Aug. 31, 2017).....................................46

*Natchez Coca-Cola Bottling Co., Inc. v. N.L.R.B.*,
    750 F.2d 1350 (5th Cir. 1985) ..................................................... 16, 21

*SPS Corp I, Fundo de Investimento em Direitos Creditorios*
    *Nao Padronizados v. Gen. Motors Co.*,
    110 F.4th 586 (3d Cir. 2024) ..................................................... 38, 39, 42

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
    694 F.3d 548 (5th Cir. 2012) ........................................................ passim

*Treece v. Andrews*,
    188 Fed. Appx. 230 (5th Cir. 2006) ..................................................23

*Venequip, S.A. v. Mustang Mach. Co., LLC*,
    2022 WL 3951173 (S.D. Tex. Aug. 30, 2022),
    *aff'd sub nom. Venequip, S.A. v. Mustang Mach. Co., L.L.C.*,
    2023 WL 5031480 (5th Cir. Aug. 7, 2023) ..........................................24

## Statutes and Rules

28 U.S.C. § 1782.......................................................................... passim

Fed. R. Civ. P. 26(b)(1).....................................................................25

French Commercial Code, Article L151-1............................................ 42, 47

**Other Authorities**

Global Newswire, *North Atlantic France SAS successfully completes the acquisition of a controlling stake in Esso Société Anonyme Française SA and of 100% of ExxonMobil Chemical France SAS, two independent companies of the ExxonMobil group*, Yahoo! Finance, available at https://finance.yahoo.com/news/north-atlantic-france-sas-successfully-110500229.html .......................................................... 14

4899-4094-5527

No. 25-20366

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CANDEL & PARTNERS SAS,
Movant-Appellant,

v.

EXXON MOBIL CORPORATION,
Respondent-Appellee

_____

**BRIEF OF APPELLEE**

_____

Respondent-Appellee ExxonMobil files this Brief of Appellee in support of the final judgment.

STATEMENT OF ISSUES

1.   Did the district court adequately provide its reasoning when it concisely analyzed the *Intel* factors in its oral ruling granting ExxonMobil's Motion to Quash and again in its written ruling denying Candel's Motion for Reconsideration?

2.   Did the district court abuse its discretion by refusing to order a U.S.-based parent of a foreign subsidiary to produce documents in the

1

United States for use in France when French courts have denied requests for the same discovery against the same French subsidiary?

## STATEMENT OF THE CASE

This dispute arises from an application by Candel & Partners SAS ("Candel"), a French company, to seek discovery pursuant to 28 U.S.C. § 1782 from ExxonMobil, a U.S. company, for use in Candel's lawsuit in France against the CEO of a now-former ExxonMobil affiliate, Esso SAF, another French company. The district court properly granted ExxonMobil's motion to quash, finding that each of the factors laid out by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), supported quashing Candel's subpoena. Those discretionary factors are: (1) whether the Respondent, ExxonMobil, is a participant in the foreign proceeding, (2) the receptivity of the foreign court to U.S. judicial assistance; (3) whether the discovery request seeks to circumvent foreign restrictions on discovery; and (4) whether the request is unduly intrusive or burdensome. *Id.* at 264–65. The district court did not abuse its discretion in its decision.

A.    Parties

ExxonMobil is a multinational, public corporation with thousands of subsidiaries and affiliates throughout the world. ROA.1484. One of

2

those indirect affiliates was, until very recently, Esso, a French publicly traded company that refines, distributes, and markets oil products in France and internationally. ROA.1289–90, 1488. Esso, in turn, has numerous other shareholders, including Candel and CIAM Fund ("CIAM"), both minority shareholders that each own less than 5% of shares of Esso. ROA.1489, 1491.

As is common with large multinational corporations, ExxonMobil's affiliates, including Esso, frequently interact and do business among themselves. ROA.1484–85. These intercompany transactions include, but are not limited to, purchases of crude/feedstock, sales of refined products, financing, and services including maintenance, transportation, logistics, procurement, marketing, information technology, accounting, customer service, and human resources. ROA.1484–85. The policies surrounding these intercompany transactions are rarely if ever formalized into tangible, finite sets of documents, but the core principle underlying these transactions is the same—the prices in these related party transactions are made at arm's-length. ROA.1484–85. The documents reflecting such policies are naturally dispersed among the thousand-plus ExxonMobil affiliates around the world. ROA.1484–85.

4899-4094-5527

**B.** <u>Candel and other minority shareholders try and fail to obtain confidential documents in France.</u>

Several years ago, another activist minority shareholder in France, CIAM, requested the appointment of an expert to investigate alleged issues resulting from intercompany agreements between Esso and ExxonMobil and its affiliates for the purchase and resale of crude oil and refined products. ROA.1489. In France, the appointment of such an expert allows parties to request any "legally admissible" investigative measure for the purpose of resolving a legal dispute. ROA.1489.

The Commercial Court of Nanterre initially rejected CIAM's request, noting that "[CIAM] have not put forward any indication or evidence that could imply misconduct on the part of said management[.]" ROA.1529–30. CIAM appealed the rejection, and the Court of Appeals of Versailles reversed and granted CIAM's request. ROA.1541–43. Esso appealed this decision to the highest French court. ROA.1541–42. Meanwhile, CIAM additionally requested that Esso disclose all "contractual documentation relating to agreements on current transactions" with ExxonMobil and its affiliates, pursuant to a (now abolished) provision in Esso's company bylaws. ROA.1491. The Commercial Court of Nanterre granted this request. ROA.1553. Esso

appealed, arguing that the requested discovery was highly confidential, and any harm caused by the disclosure of the documents sought would be impossible to cure. ROA.1490–92, 1541–45, 1552–55, 1566–70. The Court of Appeal of Versailles agreed with Esso, noting:

> The continuation of the provisional enforcement would result in manifestly excessive consequences, as the decision ordered the disclosure of agreements binding Esso to third-party companies, including the right to make copies. As a result, the provisional enforcement of this decision, due to its irreversible nature, would have manifestly excessive consequences, even though the decision specified that CIAM Fund may only use the information obtained within the framework of legal actions based on that information.

ROA.1557. CIAM appealed this decision to the highest French court. ROA.1587.

While the appeals of the CIAM requests were pending, Candel, another activist minority shareholder and the Movant-Appellant here, made nearly identical requests to another French court. ROA.1492–93. Candel requested the appointment of the same type of legal expert previously requested by CIAM to investigate Esso's intercompany agreements with ExxonMobil and its affiliates. ROA.1492–93. In fact, Candel's request was nearly identical to the trial court's order granting the same discovery to CIAM, which Esso had appealed. ROA.1493.

5

Before Candel's requests were ruled on, the appeals of CIAM's requests were resolved conclusively in Esso's favor. ROA.1490–92, 1545, 1557, 1574. The highest French court denied CIAM's request for an expert and determined that CIAM had improperly used the legal expert-appointment procedure as a method of discovering otherwise unobtainable documents, and in so doing had "misapplied" the applicable French law. ROA.1544–45, 1490–91. The court specifically noted that a French law allows shareholders to request an appraisal related to the management of a company *if* the shareholders hold at least 5% of the shares of the company, which CIAM does not. ROA.1491. It is undisputed that Candel similarly fails to hold at least 5% of Esso's company shares. ROA.1491.

That same day, the highest French court rejected CIAM's appeal of the Court of Versailles's denial of its request for documents. ROA.1491–92, 1587–90. In doing so, the highest French court effectively concluded that the documents that CIAM sought—the same documents Candel seeks in its Subpoena—were confidential business secrets that CIAM had no right to obtain. ROA.1491–92, 1587–90.

6

Likely recognizing that its document requests were similarly going to be rejected, Candel promptly withdrew its requests for that same information within a week of the resolution of CIAM's appeals. ROA.1494, 1602–03. This is unsurprising—after all, Candel also held less than 5% interest in Esso, and its requests were nearly identical replicas of CIAM's failed requests. ROA.1491, 1493.

C.    <u>Candel tries a new tactic and commences a lawsuit against Esso's CEO in France.</u>

Undeterred, Candel initiated a new lawsuit in France alleging mismanagement by Esso's Chairman and CEO Charles Amyot (the "French Proceeding"). ROA.1494. This was the French equivalent of a shareholder derivative lawsuit here in the United States. ROA.1494. In the French Proceeding, Candel requested that the French court appoint an ad hoc representative to represent Esso and investigate alleged errors by Mr. Amyot in relation to intercompany transactions between Esso and other ExxonMobil affiliates. ROA.1494. This "new" French Proceeding is premised on *exactly the same grounds* as Candel's withdrawn discovery requests. ROA.1494–95.

Candel's initial request for an ad hoc representative to represent Esso in the French Proceeding was rejected by the court because Candel

had not demonstrated a need for the appointment. ROA.1494, 1619–20. Candel has since sought the appointment of an ad hoc representative in a new court, but Esso has challenged that appointment. ROA.1494. The French Proceeding is still underway. ROA.1495. To date, Candel has tried but failed to obtain any documents relating to Esso's transfer pricing materials in France that are subject to the Subpoena.

D.   Candel files an *ex parte* application for the Subpoena in U.S. federal court.

Having tried and failed to obtain documents relating to Esso's transfer pricing materials in France, Candel tried another tactic. Candel applied *ex parte* to the United States District Court for the Southern District of Texas for an order pursuant to 28 U.S.C. § 1782 to serve a subpoena on ExxonMobil ("Subpoena"). Notably, in its Subpoena, Candel sought the same types of documents related to Esso's agreements with ExxonMobil and its subsidiaries that CIAM sought and was denied by the French courts and that Candel sought but hastily withdrew after that decision. ROA.1418–43, 1493, 1495. Candel did not confer with ExxonMobil before filing its application *ex parte*.

Candel's Subpoena seeks five broad categories of documents:

1. Documents sufficient to understand the transfer pricing policies of the ExxonMobil Group, including any ExxonMobil Group transfer pricing manuals and any documents referenced therein.

2. Documents sufficient to understand the ExxonMobil Group's transfer pricing policies with respect to Esso SAF.

3. Documents sufficient to show ExxonMobil Group's application of its transfer pricing manuals to Esso SAF for the three most recent years for which such documents are available.

4. All Related Party Agreements, which the Subpoena defines broadly as "any agreement as to which the parties include Esso SAF and any other Person in the ExxonMobil Group."

5. All Documents concerning Esso SAF's Articles of Association, including but not limited to all documents concerning any amendments or interpretations thereof.

ROA.1442–43.

In the Subpoena, "ExxonMobil Group" is defined broadly to mean "ExxonMobil Corporation and its subsidiaries, affiliates, predecessors, successors, assignees, officers, directors, employees, representatives, and partners." ROA.1441. This definition encompasses over a thousand distinct entities and many thousands of persons around the world. ROA.1484. Additionally, the Subpoena seeks documents dating back to January 1, 2020. ROA.1441.

The Subpoena also originally sought to take the deposition of a corporate representative of ExxonMobil, but Candel subsequently withdrew that request. ROA.1428–35, 1880.

E.    ExxonMobil moves to quash the Subpoena and the district court quashes the Subpoena following a hearing.

The district court granted Candel's *ex parte* application, but permitted ExxonMobil to file a motion to quash. ROA.1416–17. When ExxonMobil informed Candel that it would be filing a motion to quash, Candel sought to confer with ExxonMobil regarding the Subpoena's scope. ROA.1783–91. ExxonMobil refused this request because it sought to quash the Subpoena in its entirety. ROA.1858–59.

ExxonMobil filed its Motion to Quash. ROA.1453–1657. The Motion to Quash argued that the Subpoena was wildly overbroad, and in support ExxonMobil attached a declaration from its Vice President of Financial Services in the Global Business Solutions attesting to the overbreadth and burden of the Subpoena. ROA.1484–87. The Motion to Quash argued that even if the Subpoena was narrowed to seek documents potentially related to Esso, the remaining *Intel* factors all supported quashing the Subpoena. ROA.1474. First, documents related to Esso would be in the possession, custody, and control of Esso, and therefore would be within

4899-4094-5527

the reach the French courts. ROA.1474–75. Second, the French courts had already denied identical requests from CIAM. ROA.1475–77. And third, Candel was clearly attempting to circumvent French law by serving its Subpoena. ROA.1477–80. Candel filed an Opposition to the Motion to Quash. ROA.1659–1851. ExxonMobil then filed a Reply in Support of its Motion. ROA.1854–65.

The district court held a hearing via teleconference on May 13, 2025. ROA.1981. At the outset, the judge confirmed that he had read the parties' briefing. ROA.1983. Oral argument lasted nearly 45 minutes, with counsel for both parties providing extensive argument and the judge asking numerous questions. ROA.1983–2007. After a recess, the judge orally granted the Motion to Quash, stating:

> I'm going to grant the motion to quash. I do think that under the intel factors the balance of authority cuts sharply toward Exxon. Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign tribunal. I don't think the tribunal needs or would be receptive to help from a Texas court. I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on; and I think the request is way, way too broad and intrusive and burdensome. So I'm going to grant the motion to quash and will not proceed further here.

ROA.2007–2008.

11

F.   <u>Candel Moves to Reconsider.</u>

Candel never requested a written order memorializing the Court's oral ruling. Instead, one month later, Candel filed a Motion for Reconsideration. ROA.1873–1944. Candel premised its motion on an ExxonMobil press release from May 28, 2025—two weeks after the hearing and the Court's oral order—that announced that ExxonMobil France was in "exclusive negotiations" to sell its 82.9% ownership interest in Esso to a company called North Atlantic France SAS. ROA.1874–85. Candel argued that the proposed sale changed the relationship between ExxonMobil and Esso, and speculated (without any evidence) that the proposed sale meant that ExxonMobil had gathered all the documents Candel sought, meaning that the first and fourth *Intel* factors now favored Candel. ROA.1878–80. Candel therefore asked the district court to approve a narrowed version of the Subpoena. ROA.1880–82.

Again, the parties extensively briefed the issues on the Motion for Reconsideration, with ExxonMobil filing a Response and Candel filing a Reply. ROA.1873–1967. In its Response, ExxonMobil pointed out that Candel's argument was based almost entirely on speculation, both that

12

the documents sought had been gathered and that the sale would actually occur at the time. ROA. 1952–54. More importantly, ExxonMobil noted that Candel's Motion for Reconsideration did not address the district court's analysis of the other *Intel* factors in that similar requests for such documents has been denied by the French courts and that Candel was attempting to circumvent French law. ROA.1956.

The district court denied the Motion for Reconsideration in a written opinion. ROA.1968–70. In the opinion, the court reiterated that all four *Intel* factors favored ExxonMobil:

> At the May 13, 2025 motion hearing, the Court considered the four *Intel* factors . . . The Court granted ExxonMobil's Motion to Quash on the grounds that all four *Intel* factors weighed against granting discovery under 28 U.S.C. § 1782. Even if the Court considers the press release as newly discovered evidence . . . the Court finds that it does not warrant reconsideration of its previous decision.

ROA.1968–70. The court also concluded (1) that the possibility of a sale did not alter the court's analysis of the first *Intel* factor; (2) it had already rejected Candel's proposal to narrow the Subpoena; and (3) that French courts would not be receptive to help and that circumvention had occurred. ROA.1969–70. The court entered a final judgment the same day. ROA.1971. Candel then noticed this appeal. ROA.1972–73.

13

Less than a month ago, and while this appeal has been pending, North Atlantic France SAS completed its acquisition of a controlling stake in Esso SAF from ExxonMobil.[1]

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in quashing Candel's Subpoena. After reading extensive briefing from both parties and participating in substantial oral argument in which he asked numerous questions, the judge issued an oral ruling stating that all four *Intel* factors weighed in ExxonMobil's favor. ROA.1453–1865, 1983–2008. After Candel filed a Motion for Reconsideration, which again both parties extensively briefed, the district court affirmed its ruling and reiterated its finding that all four *Intel* factors weighed in ExxonMobil's favor. ROA. 1873–1944, 1946–70. These rulings give this Court a sufficient basis for review.

The district court was also correct on the merits because all four *Intel* factors weigh in ExxonMobil's favor:

---

[1] *See* Global Newswire, *North Atlantic France SAS successfully completes the acquisition of a controlling stake in Esso Société Anonyme Française SA and of 100% of ExxonMobil Chemical France SAS, two independent companies of the ExxonMobil group*, Yahoo! Finance, available at https://finance.yahoo.com/news/north-atlantic-france-sas-successfully-110500229.html (last visited, Dec. 17, 2025).

14

- <u>First</u>, the Subpoena is facially overbroad. It seeks documents that have no rational connection to the French litigation and seeks documents that are not in the possession, custody, or control of ExxonMobil;

- <u>Second</u>, when the patently overbroad requests are pared down to a hypothetical set of documents that even *could be* relevant to the French litigation, those documents that possibly relate to Esso are within reach of the French court, meaning that the Section 1782 discovery is not warranted;

- <u>Third</u>, the French courts have already rejected requests for these types of documents; and

- <u>Fourth</u>, because French law prohibits minority shareholders like Candel from obtaining this type of discovery in France, Candel's Subpoena reflects an intent to circumvent French legal restrictions.

This Court should therefore affirm the lower court's decision to quash the Subpoena.

ARGUMENT

A.    <u>Standard of review.</u>

A district court's grant of a motion to quash and its weighing of the 1782 *Intel* factors is reviewed for abuse of discretion. *Banco Mercantil de*

15

*Norte, S.A. v. Paramo*, 114 F.4th 757, 760 (5th Cir. 2024); *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.,* 694 F.3d 548, 554 (5th Cir. 2012). The Court should affirm the district court's decision unless it is arbitrary or clearly unreasonable. *Paramo*, 114 F.4th at 760 (5th Cir. 2024); *Tex. Keystone,* 694 F.3d at 554.

B.    <u>The district court's reasoning was sufficient.</u>

A court must offer some explanation when it grants or denies a motion to quash Section 1782 discovery. *Paramo*, 114 F.4th at 762. The court need not explain its decision in "exacting detail" so long as it indicates the basis for its decision. *Natchez Coca-Cola Bottling Co., Inc. v. N.L.R.B.*, 750 F.2d 1350, 1353 (5th Cir. 1985). A summary analysis of the Section 1782 factors is sufficient. *Paramo*, 114 F.4th at 762 (vacating the lower court's denial of a motion to quash and commenting that "[h]ad the court analyzed the [1782] factors, even summarily . . . this would be a different case."). It is an abuse of discretion when a court fails to provide any explanation for its decision. *Id.* at 760; *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 Fed. Appx. 319, 324–25 (5th Cir. 2015); *Tex. Keystone,* 694 F.3d at 554–55.

16

Candel argues that the district court in this case abused its discretion by "fail[ing] to explain its decision," and points to *Paramo*, *Texas Keystone*, and *Bravo* as support. Br. p.20–22. None of these cases resemble the situation here.

In *Paramo*, the district court granted an *ex parte* Section 1782 application, and the respondent subsequently filed a motion to quash. *Paramo*, 114 F.4th at 759. Just four days after the applicant filed a response, the court denied the motion to quash with a single sentence: "After reviewing the Motion, the Response, the record and the applicable law, the Court is of the opinion that it should be **DENIED**." *Id*. The Court did not allow the respondent to file a reply, and did not hold a hearing. *Id*. This Court vacated and remanded the case, commenting that the court's failure to "meaningfully engage" with the Section 1782 inquiry left this Court with "no way to discern what drove the district court's quick decision." *Id*. at 762. This Court added that while a mere recitation of the Section 1782 factors was insufficient, the case would have been different if the court had "analyzed the factors, even summarily." *Id*.

Similarly, in *Texas Keystone*, the district court granted a Section 1782 application, and the respondent subsequently filed a motion to

4899-4094-5527

quash. *Tex. Keystone*, 694 F.3d at 551–52. The court granted the motion to quash *the next day*, without even allowing the applicant to respond to the motion, much less holding a hearing. *Id.* at 552. The order said only that "[t]he subpoenas . . . are quashed" with no explanation whatsoever. *Id.* On appeal, this Court noted that there was "no record evidence that the district court analyzed the [1782] factors" and therefore held that the court had abused its discretion. *Id.* at 556.

Finally, in *Bravo*, the district court held a hearing on a Section 1782 application, but did not rule on the application during the hearing. *Bravo*, 613 Fed. Appx. at 321. Four days later, the court issued an order denying the application with no explanation. *Id.* While the court mentioned the *Intel* factors during the hearing and asked questions regarding them, neither the order nor the hearing transcript indicated how the court decided those factors. *Id.* at 324. This Court consequently vacated and remanded the case, with instructions to the district court to provide oral or written reasons for its decision. *Id.* at 325.

None of these cases resemble the situation here. Unlike in *Paramo* and *Texas Keystone*, the parties here both extensively briefed the merits of the motion to quash. ROA.1453–1865. Also unlike *Paramo* and *Texas*

18

*Keystone*, the court here actually held a hearing in which the judge confirmed he had read the parties' briefing and meaningfully engaged with the Section 1782 inquiry, asking multiple questions of the parties, and hearing arguments from each side thoroughly explaining their positions. ROA. 1983–2008. In his ruling from the bench, the judge went through each *Intel* factor and noted that each weighed in favor of Exxon:

> I'm going to grant the motion to quash. I do think that under the intel factors the balance of authority cuts sharply toward Exxon. Exxon may not be a participant directly in the French action, but I do have no doubts about the integrity of the foreign tribunal. I don't think the tribunal needs or would be receptive to help from a Texas court. I think there's some circumvention going on, perhaps unintentionally, but some circumvention going on; and I think the request is way, way too broad and intrusive and burdensome.

ROA.2007–08. This substantive ruling distinguishes this case from *Bravo*, in which the district court's order failed to "contain any explanation of why it denied the application." *Bravo*, 613 F. App'x at 324.

And the court's explanation did not end there. After Candel filed a Motion for Reconsideration, the parties fully briefed the merits of that motion as well. ROA.1873–1967. The court then issued a written opinion denying the motion and reiterating:

> At the May 13, 2025 motion hearing, the Court considered the four *Intel* factors . . . The Court granted ExxonMobil's Motion

to Quash on the grounds that all four *Intel* factors weighed against granting discovery under 28 U.S.C. § 1782.

ROA.1968–70.

Candel claims that the Court's oral decision lacks a reasonable explanation and there is no other basis in the record on which the decision can be affirmed. Br. p.18–19. But in both its oral ruling on the Motion to Quash *and* its written ruling on the Motion for Reconsideration, the court clearly explained that it decided all four *Intel* factors in ExxonMobil's favor.[2] ROA.2007–08, 1968–70. This is completely different from the district courts in *Paramo, Texas Keystone*, and *Bravo*, each of which made their rulings without confirming that they had even decided the four *Intel* factors, much less explaining which party each factor favored. Unlike in *Bravo*, no inference is needed to understand the court's position on the four factors here. And unlike in *Paramo*, the court did not merely recite the *Intel* factors, but actually analyzed each one and explained which party each factor favored.

---

[2] Candel argues that the court's explanation regarding the first *Intel* factor was ambiguous at the hearing, Br. p.23, but this argument is moot for two reasons. First, if Candel was genuinely confused by the Court's oral ruling, it could have requested a written order, but it did not. *See* Fed. R. Civ. P. 58(d). Second, the court's written order on the Motion for Reconsideration eliminates any confusion by clearly stating that all four factors favor ExxonMobil. ROA.1969–70.

4899-4094-5527

ROA.2007–08, 1968–70. The court "provided plain, if brief, reasoning and reached its decision after holding a teleconference with the parties and receiving written submissions from both sides[,]" the exact conduct that this Court has previously held to be sufficient. *See Anthony v. Canal Indem. Co.*, 347 Fed. Appx. 110, 113 (5th Cir. 2009).

District courts are required to provide their reasoning to provide a sufficient basis for review on appeal. *Natchez*, 750 F.2d at 1353. The district court in this case provided exactly that. The district court explicitly considered all four *Intel* factors and decided each one in favor of ExxonMobil. By "meaningfully engag[ing]" in the analysis of the *Intel* factors and adequately explaining its reasoning to grant ExxonMobil's motion to quash, the district court did not abuse its discretion.

C.    <u>The district court did not abuse its discretion in granting the Motion to Quash.</u>

The district court also did not abuse its discretion in analyzing the *Intel* factors and granting the Motion to Quash.

Candel contends that the Court need not "wade deeply" into the *Intel* factors because the Court should simply remand the case back to the district court. Br. p.27. As noted above, the district court provided adequate reasoning to support its finding that each of the *Intel* factors

favor quashing Candel's Subpoena. That is reason enough to deny Candel's appeal. But Candel does not want this Court to analyze the *Intel* factors on the merits in depth because each of the *Intel* factors overwhelmingly supports quashing Candel's subpoena, just as the lower court found. Br. p.27–28.

Section 1782 authorizes, but does not require, a federal district court to provide judicial assistance to interested parties in foreign proceedings. 28 U.S.C. § 1782; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Even if the statutory requirements authorizing discovery are met, the district court may grant or deny the discovery at its discretion. *Intel*, 542 U.S. at 264. To determine whether to grant the requested discovery, the court should consider the four *Intel* factors, which again are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Id.* at 264–65. No single factor is dispositive, and the factors

should not be applied mechanically; for example, strong enough evidence of circumvention alone can be "reason enough" to deny a Section 1782 application. *In re Associacao dos Profissionais dos Correios*, 2024 WL 4299019, at *7 (S.D.N.Y. Sept. 25, 2024).

Here, the *Intel* discretionary factors all weigh heavily in favor of quashing Candel's Subpoena, just as the district court determined. The recent change in ownership of Esso does not alter that analysis.[3] The requests are facially overbroad and seek documents far beyond the scope of the French Proceeding. Even if the requests were narrowed to seek only documents related to Esso that could be actually relevant to the French Proceeding, the other factors weigh strongly in favor of quashing the Subpoena, as follows: (1) Because all of the possibly relevant documents responsive to a narrowed subpoena are in Esso's possession, they are within the jurisdictional reach of the French court, and so U.S. court intervention is unnecessary; (2) the French court has previously

---

[3] The sale of Esso closed on November 28, 2025, over six months after the district court quashed the Subpoena. Because this evidence was obviously not available to the district court, this Court need not take it into consideration when conducting its review. *Treece v. Andrews*, 188 Fed. Appx. 230, 231 (5th Cir. 2006) ("An appellate court . . . may not consider facts which were not before the district court at the time of the challenged ruling."); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n.11 (5th Cir. 2010) (refusing to "enlarge the record" on appeal in the Section 1782 context).

23

denied the precise discovery Candel seeks in its Subpoena when it rejected discovery requests from CIAM, a similarly-situated minority shareholder, showing authoritatively that the French court would not allow the discovery that Candel seeks in its Subpoena here; and (3) as a result, Candel's attempt to obtain this discovery through a U.S. court circumvents the limitations of the French court.

1.    The district court did not abuse its discretion in finding that the Subpoena is facially overbroad and declining to narrow it.

The "intrusiveness and burden of section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure." *Venequip, S.A. v. Mustang Mach. Co., LLC*, 2022 WL 3951173, at *4 (S.D. Tex. Aug. 30, 2022), *aff'd sub nom. Venequip, S.A. v. Mustang Mach. Co., L.L.C.*, 2023 WL 5031480 (5th Cir. Aug. 7, 2023). Therefore, the requests must be sufficiently tailored to the underlying dispute and proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1); *CFE Int'l LLC v. Antaeus Group LLC*, 2022 WL 17731821, at *6, *9 (W.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 19569581 (W.D. Tex. Dec. 6, 2022).

Courts have broad discretion to quash unduly intrusive or burdensome discovery requests under Section 1782 and routinely do so.

4899-4094-5527

*See, e.g., CFE Int'l*, 2022 WL 17731821 at \*9 ("Given the breadth and format of the Subpoenas, the court is not inclined to 'trim' the requests to something more reasonable, which [applicant] had ample opportunity to do."). Here, the District Court did not abuse its discretion in finding that the Subpoena was overbroad.

In fact, Candel does not even try to argue that the Subpoena is not overbroad or unduly burdensome. Instead, Candel repeats the same arguments it made in its Opposition to the Motion to Quash, at the hearing, and in its Motion for Reconsideration: that ExxonMobil should have conferred with Candel to narrow its own Subpoena and, failing that, that the court itself should have narrowed rather than quashed the Subpoena. Br. p.41–43. Of course, by making this argument (four times no less), Candel concedes that the Subpoena it actually served was in fact facially overbroad and unduly burdensome.

Candel's urgent pleas about narrowing its Subpoena underscore that the Subpoena as written represents a textbook fishing expedition. For example, the Subpoena seeks all documents related to all transfer pricing policies and "Related Party Agreements," regardless of subject matter, for the over a thousand entities within the ExxonMobil Group.

25

4899-4094-5527

ROA.1442–43, 1484–86. These documents are scattered around the world, making it extremely burdensome for ExxonMobil to collect them. ROA.1485–86. All documents responsive to Candel's overbroad requests cannot relate to Mr. Amyot's alleged mismanagement; instead, Candel merely hopes to find something useful in the mass of documents it will receive. Because the Subpoena is an improper fishing expedition, the district court was correct to quash it. *See, e.g., Fagan v. J.P. Morgan Chase Bank*, 2019 WL 984281, at *2–*3 (W.D. Tex. Feb. 28, 2019) (rejecting Section 1782 discovery request for extensive bank records and account information as improper "fishing expedition."); *In re Request for Assistance for Ministry Legal Affs. Trin. & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel Corp.*, 542 U.S. 241 ("If the judge . . . suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request.").

As just one example, the Subpoena seeks "documents sufficient to understand the transfer pricing policies" of the entire ExxonMobil Group, which is defined to encompass over a thousand distinct entities around the world. ROA.1442, 1484. As explained by the declaration of ExxonMobil's Vice President of Financial Services in the Global Business

Solutions organization, the universe of documents sought involves millions of individual transactions across a variety of products and services and is dispersed around the world. ROA.1484–85. The vast majority of these entities' transfer pricing policies have nothing to do with Esso, much less Mr. Amyot's alleged mismanagement of Esso. ROA.1484–85.

Nor did Candel make any showing that ExxonMobil would be in possession of these documents, which are, in fact, possessed by its subsidiaries. *See In re Mun*, 2022 WL 17718815, at *2 (S.D.N.Y. Dec. 15, 2022) (noting that a parent company does not automatically possess documents belonging to its subsidiaries); *see also Goh v. Baldor Elec. Co.,* 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999) (As party seeking discovery, "Plaintiffs bear the burden of proving that Ernst & Young LLP's relationship with both Ernst & Young Singapore and Ernst & Young Thailand indicates its control over the documents."). Furthermore, with respect to Request No. 5, which relates to documents relating to Esso's Articles of Association, those documents remain in the custody, care and control of Esso, *not* ExxonMobil. ROA.1487. Because the Subpoena requests documents that are not within ExxonMobil's

possession, custody or control, the district court was correct to quash the Subpoena. *See Aguila Energia e Participcoes Ltda. v. JPMorgan Chase & Co.*, 2024 WL 3373416, at *4 (S.D.N.Y. July 10, 2024) ("[B]ecause Aguila has failed to meet its burden of establishing that JPMorgan Chase has possession, custody, or control of the documents, Aguila's 28 U.S.C. § 1782 petition is properly denied.").

Even the requests in the Subpoena related to Esso are facially overbroad. For example, Request No. 4 seeks "All Related Party Agreements" which are defined broadly in the Subpoena as "any agreement as to which the parties include Esso SAF and any other Person in the ExxonMobil Group." ROA.1441, 1443. There are hundreds and perhaps thousands of such "Related Party Agreements" as between Esso and various entities within the ExxonMobil Group. ROA.1486. Those agreements could include everything from software, employee secondment, procurement, and general support services. ROA.1486. Candel did not show—and cannot now show—that this universe of agreements could possibly be related to Mr. Amyot's alleged mismanagement of Esso that has allegedly led to lower profit margins,

28

which is what Candel claims the French Proceeding is about. ROA.1398–99.

Candel further does not dispute that for ExxonMobil to obtain these documents—even the small subset of documents that pertain to Esso that *could be* relevant to Candel's derivative claims against Mr. Amyot—is unduly burdensome. Candel failed to provide any indication that the documents it seeks are located within the Southern District of Texas, or even in the United States. Requesting "a substantial volume of data and materials located abroad be brought into the United States for subsequent use in proceedings abroad" is "a nonsensical result" and weighs in favor of denying the request. *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022). Because the documents are held by the individual entities involved, including, notably, Esso itself, asking ExxonMobil to search for, collect, and produce all of the requested documents from the possibly thousands of involved entities around the world would require substantial time, energy, and resources. ROA.1484–86. Furthermore, ExxonMobil presented evidence of legal limitations on the disclosure of such documents from various ExxonMobil affiliates, including local laws

29

and contractual restrictions (to the extent that there are counterparties involved). ROA.1485–86.

Instead of arguing that its Subpoena as written is narrowly tailored and does not result in an undue burden, Candel complains—again, as it did in the proceedings below—that ExxonMobil did not meet and confer to narrow the Subpoena. Br. p.13–14, 41–42. That is irrelevant for several reasons. First, ExxonMobil had no obligation, under the local rules or otherwise, to meet and confer to ensure that Candel's facially improper Subpoena complied with the law. Second, ExxonMobil sought to quash the Subpoena in its entirety, because the discovery that Candel seeks is not allowed under French law (and has been part of a multi-year pressure campaign by activist shareholders to obtain documents to which they are not entitled). And finally, Candel's complaints ring hollow because it was Candel that filed the Section 1782 Application *ex parte*, which forced ExxonMobil to hire outside counsel and to litigate this matter. Candel's sermonizing about "preserv[ing] precious judicial resources" and promoting the "just, speedy, and inexpensive determination" of its requests is undermined by its choice to file the application *ex parte* before ever conferring with ExxonMobil. Br. p.41–42.

The district court is not required to narrow an impermissibly overbroad and unduly burdensome subpoena if doing so would be improper. *See, e.g., CFE Int'l*, 2022 WL 17731821, at *9 ("Given the breadth and format of the Subpoenas, the court is not inclined to 'trim' the requests to something more reasonable, which [applicant] had ample opportunity to do."); *Danzy v. IATSE Local 22*, 2021 WL 6753479, at *4 (D.D.C. Sept. 24, 2021) (rejecting petitioner's request to modify subpoena because petitioner is "simply not entitled to retake small bites of the apple at the expense of delaying the resolution of this case and unduly expending the time and resources of the parties and the Court.")

Candel expressly invited the district court to narrow the Subpoena, not once but three times. ROA.1683, 1994–95, 1880–82. The district court declined all of these invitations, and for good reason. Even when the Subpoena is narrowed to the scope Candel previously suggested in its Response to the Motion to Quash—seeking only "agreements related to Esso's crude oil transactions and the anomalies identified" in the French Proceeding[4]—the remaining three factors still weigh heavily in favor of

---

[4] Candel repeatedly refers to "anomalies" identified in the French Proceeding, including from a report from its own self-serving "financial expert," but Candel has never proven any such anomaly and no court has ever found any such anomaly. *See, e.g.,* Br. p.7–8. Candel also contends that it has made several attempts to obtain

quashing this imaginary subpoena. ROA.1667, 1673, 1683. This is because the documents that *could be* relevant to Candel's derivative proceeding against Mr. Amyot in France have been requested and categorically rejected by the French courts, as discussed below. Consequently, the district court did not abuse its discretion in finding that the Subpoena was overbroad and declining to narrow it.

Finally, despite the fact that the district court agreed that the requested discovery was too intrusive, Candel waves away these "overwrought" concerns by dismissively stating that it is willing to stipulate to a reasonable confidentiality agreement and that the French courts could impose appropriate confidentiality restrictions. Br. p.43. This is not enough. The information sought by Candel—documents related to pricing policies among ExxonMobil and all its affiliates—is not only confidential, but actually constitutes trade secrets under both Texas and France law (which have essentially identical definitions of trade secrets). ROA.1498–1501, 1639–40, 1642. Candel offers no evidence regarding how the French court could protect the confidentiality of any

---

explanations from Esso at its annual general meetings, without success, but this argument is belied by the record, which involve Esso's representatives, including Mr. Amyot, responding to requests for information. *See* Br. p.7–8; ROA.619–23, 689–96, 715–27, 740–41, 926–51.

discovery granted here, meaning any trade secrets disclosed would be "at the mercy of [foreign] procedures that are unfamiliar to this court." *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623–24 (8th Cir. 2016). In fact, when denying discovery of the exact materials now sought to CIAM, the Court of Appeal of Versailles noted that restrictions intended to limit the use of highly confidential information would be insufficient. ROA.1557.

Indeed, granting Candel's Section 1782 application undermines French law governing the protection of trade secrets and undermines the purpose of Section 1782. Any customer or competitor of Esso could file a sham claim in the French courts, then make an application to a U.S. court to request highly sensitive commercial documents under a Section 1782 request. After obtaining that information, the customer or competitor could withdraw their suit in France; a protective order would be useless since the customer or competitor would *still* have all the information they need to unfairly compete or negotiate with Esso. In short, there is no indication that a protective order would guarantee the confidentiality of ExxonMobil's documents. *Accord Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018) (finding Petitioner

33

"did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents.").

    2.    <u>The potentially relevant documents that relate to Esso are within France's jurisdictional reach.</u>

Under the first *Intel* factor, Section 1782 discovery is more likely to be granted when the person from whom discovery is sought is not a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. The focus of this first *Intel* factor is whether the "foreign tribunal has the ability to control the evidence sought and order production." *Correios*, 2024 WL 4299019, at *5 (citing *In re Ex Parte Application Porsche Automobil Holding SE*, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016)).

It is technically true that ExxonMobil is not a participant in the French Proceeding. But despite what Candel would have this Court believe, the inquiry of this *Intel* factor does not begin and end there. In *Correios*, the district court considered a Section 1782 request for discovery directed to the Bank of New York Mellon Corporation ("BNY Mellon"), the parent company of one of the participants in the foreign proceeding. *Id.* at *1. As here, the applicant sought documents from the

parent and *all* of BNY Mellon's subsidiaries and affiliates.[5] *Id.* at *2. The court acknowledged that while BNY Mellon was not a party to the foreign proceeding, it found the subpoena was so broad as to include documents held by the subsidiary that was a participant in the foreign proceeding, as here. *Id.* at *5. The court noted that this *Intel* factor would only weigh in favor of granting the discovery sought if it was narrowed to seek only documents out of the participant subsidiary's reach. *Id.* at *6. Ultimately, the court found that if it were to consider this first *Intel* factor on its own, it would issue a tailored discovery order, but when examining all of the remaining *Intel* factors, including the evidence that the applicant's request was "at least in part—a veiled attempt to circumvent" legal restrictions, it would deny the application. *Id.* at *6–7.

*Correios* illustrates why Candel's offer to narrow the Subpoena—which it repeats in its discussion regarding this factor—is not enough.

---

[5] In its Motion for Reconsideration, Candel argued that ExxonMobil's potential sale of Esso meant that cases like *Correios* regarding discovery from affiliates are inapplicable. ROA.1878–79. Candel seems to have recognized the folly of this argument because it does not repeat it here. Now, even though ExxonMobil France's sale of Esso has occurred, that does not change the fact that when the district court ruled on Candel's application, Esso was an affiliate of ExxonMobil, and so the reasoning in cases like *Correios* still applies. *See also Ecuadorian Plaintiffs*, 619 F.3d at 379 n.11 (refusing to "enlarge the record" on appeal in the Section 1782 context).

Br. p.44. If the Subpoena is narrowed to solely seek documents relevant to the French Proceeding, those documents will naturally only be related to Esso. Esso would possess documents relevant to Esso, and therefore the French court could order the production of Esso's relevant documents without the need for any assistance from the United States, should it deem it appropriate to do so.[6] And, as in *Correios*, once the Court considers the other *Intel* factors, in that the discovery Candel seeks has already been rejected by French courts and this Subpoena represents a clear attempt to circumvent the French legal system, it is clear that the district court properly quashed the Subpoena here.

Finally, and contrary to Candel's claims, the reasoning in *Correios* does not implicate a foreign-exhaustion requirement. *See* Br. p.44–45. "Foreign exhaustion" means that a Section 1782 applicant *must* seek discovery in the foreign forum before asking for assistance from the United States. *Gov't of Ghana v. ProEnergy Services, LLC*, 677 F.3d 340, 345 (8th Cir. 2012). Candel is correct that courts have widely rejected reading such a requirement into Section 1782, but that is not what the

---

[6] This fact also renders the recent sale of Esso essentially irrelevant. The documents Candel seeks remain within reach of the French courts regardless of whether ExxonMobil or North Atlantic France owns Esso, because those documents are in Esso's control.

36

district court in *Correios*, or the district court here, did. Br. p.44–45. Just because Section 1782 applicants are not *required* to seek discovery in foreign forums first does not mean that it is irrelevant if the documents they seek are within the jurisdictional reach of those foreign forums. Quite the opposite—that is precisely the question asked by the first *Intel* factor.[7] Because the only potentially relevant documents that Candel seeks are within the jurisdictional reach of the French court, the district court did not abuse its discretion in finding that the first *Intel* factor weighed in favor of ExxonMobil.

3. The French court has conclusively demonstrated that it would reject the evidence sought.

Under the second *Intel* factor, Section 1782 discovery should be denied when the foreign tribunal would reject the evidence sought. *Intel*, 542 U.S. at 264–65; *see Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (explaining that parties must provide proof that a foreign tribunal would reject evidence). "[C]ourts may consider receptivity generally or specifically." *SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th

---

[7] This fact is also relevant to the analysis of the third *Intel* factor, discussed *infra* section (C)(4).

586, 593 (3d Cir. 2024). A party may point to prior foreign court orders denying requests for the same documents as proof that a foreign tribunal would reject evidence. *Id.* at 593 n.4. That is the situation here.

In *SPS*, the district court rejected a Section 1782 application when the foreign tribunal had previously rebuffed the applicant's effort to obtain the requested discovery. *Id.* at 594. The Third Circuit held that this was sufficient to show this factor weighed against the Section 1782 discovery:

> Our opinion included dicta cautioning that a foreign court's refusal to allow parallel discovery does not necessarily mean that it would reject "relevant evidence tendered to it if procured without its assistance." True enough, but that possibility does not mean the District Court abused its discretion by concluding the **Brazilian courts are not receptive to extraterritorial discovery from SPS, whose requests for substantially the same discovery they have rejected.** Unlike the party opposing § 1782 discovery in *Chevron*, GM has shown that the Brazilian court presiding over the parties' discovery dispute rebuffed SPS's effort to take the requested discovery. Beyond that, we do not require GM to prove a negative, *i.e.*, that those courts or Brazil's legal system generally would under no circumstances be receptive to the § 1782 discovery sought here.

*Id.* (internal citations omitted) (emphasis added).

Candel's insistence that French courts are *generally* receptive to assistance from U.S. courts is a red herring.[8] Br. p.32–33. Just as in *SPS*, there is authoritative proof that the French courts have already rejected requests for the *exact same evidence* now sought in the United States by Candel—not just once, but *twice on the same day*. ROA.1541–45, 1587–90. Importantly, and despite Candel's claim to the contrary, this authoritative proof does not come in the form of potentially "biased interpretations of foreign law," but rather actual judicial declarations in the form of French court opinions. Br. p. 36; ROA.1490–92, 1543–45, 1554–57, 1568–74, 1590. No speculation, analysis, or interpretation by affidavit of legal experts is required. *See* Br. p.36.

First, the highest French court denied CIAM's—another activist minority shareholder—request for an investigation into Esso's management, including of its intercompany agreements and transactions, noting the discovery sought was only available under a different mechanism that was unavailable to shareholders like CIAM

---

[8] Candel urges that *Consellior* should guide the Court's thinking here. Br. p.33–34. While *Consellior* involves a Section 1782 application concerning a French subsidiary of an American company, that is where the resemblance to the situation here ends. The applicant in *Consellior* never attempted to obtain similar, let alone identical, discovery in France before turning to the United States, which is the key fact to decide this factor in the present case. The *SPS* case is much more instructive on that point.

and Candel with less than 5% of ownership of Esso's shares. ROA.1490–91, 1543–45.

That same day, the highest French court dismissed CIAM's appeal of a lower French court's denial of CIAM's request for disclosure of Esso's intercompany agreements and related documents. ROA.1491–92, 1554–57, 1568–74, 1590. In dismissing the appeal, the highest French court specifically found that CIAM's request ran contrary to Esso's Articles of Association:

> [T]he Court of Appeal, without distorting the submissions of the appeal of the company Ciam Fund, deduced exactly that the request for disclosure made by that company did not comply with the shareholders' right of disclosure provided for in Article 23.5 of the articles of association of the company Esso.

ROA.1590. The Subpoena seeks the same information that the highest French court denied to CIAM.

Candel argues that "the French courts have never considered whether to allow the discovery sought here in the proceeding for which Candel seeks to use it." Br. p.36. This may be true in the most literal sense of the word, in that CIAM and Candel are indeed separate entities. But CIAM and Candel are both minority shareholders of Esso with less than 5% ownership. ROA.1491. CIAM and Candel both originally

requested appointment of a legal expert to investigate issues related to intercompany agreements involving Esso. ROA.1489, 1492–93. CIAM and Candel both originally requested nearly identical sets of documents from Esso. ROA.1491–93. So when the French courts ultimately denied both of CIAM's requests, it is not surprising that Candel then (1) withdrew its nearly identical requests before they could be ruled on and (2) filed a new claim under a slightly different mechanism to seek the same information. ROA.1490–92, 1494, 1545, 1553–57, 1567–70, 1574, 1587–90, 1602–03. Candel too seeks this documentation as part of its request for an ad hoc representative to represent Esso in Candel's derivative action against Mr. Amyot, Esso's CEO, which Esso is currently challenging. ROA.1494–95.

Candel's argument that the French Supreme Court's remand of CIAM's request under a different statute is not a "solid wall" against discovery is unavailing. Br. p.35. Candel fails to mention that this "different provision" was Article 225-231, which only permits the discovery requested to shareholders with at least 5% ownership.

ROA.1490–91, 1545. Because CIAM holds less than 5% ownership, this remand is a conclusive denial.[9] ROA.1491.

Consequently, contrary to Candel's contention that the precise discovery sought has not been considered, it is undeniable that (1) French courts have conclusively rejected attempts to discover the precise information now sought from the precise type of party that now seeks it and (2) French courts have *never* allowed the discovery Candel seeks. Br. p.36.

As in *SPS*, the rejection by the French courts of requests for substantially the same discovery that Candel seeks here reflects that the French courts would not be receptive to the discovery sought here. Indeed, as the declaration of Esso's outside counsel, Victor Ranieri, states, Candel's request for documents relating to transfer pricing materials and related party transactions runs afoul of Article L151-1 of the French Commercial Code for three main reasons: (1) as a minority shareholder with less than 5% of Esso's shares, Candel does not have authority to access this requested information; (2) the commercial value

---

[9] Additionally, the fact that the French Supreme Court ordered CIAM to proceed in French courts under another French statute confirms that France is the appropriate venue to decide these sorts of discovery disputes.

42

of the requested documents represent trade secrets that, if disclosed, could be used by Esso's competitors; and (3) Esso has opposed the disclosure of such agreements. ROA.1498–1501.

Lastly, Candel's argument that the district court "fail[ed] to apply the correct standard" is wrong. Br. p.32. As the caselaw Candel itself cites makes clear, authoritative proof that the foreign tribunal would reject the evidence sought is simply the mechanism to demonstrate the foreign tribunal's receptiveness. Br. p.30–31; *In re Ord. Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proc.*, 2025 WL 714374, at *5 (E.D. Tex. Mar. 5, 2025) ("The second *Intel* factor instructs the Court to deny discovery due to the foreign tribunal's lack of receptiveness only when the party resisting discovery provides 'authoritative proof that a foreign tribunal would reject evidence' obtained via § 1782.") (quoting *Ecuadorian Plaintiffs*, 619 F.3d at 378)). Here, the district court expressly found that the French courts would not be receptive to help. ROA.2007, 1970. This was not an abuse of discretion because, as discussed above, the court was presented with authoritative proof that French courts had already rejected requests for nearly identical discovery from a nearly identically-situated party. There is no requirement that the

43

district court use the magic words "authoritative proof" in its ruling. *Accord Gift v. Anadarko Petroleum Corp. Change of Control Severance Plan*, 2024 WL 4689051, at \*2 n.1 (5th Cir. Nov. 6, 2024) (finding no requirement to use "magic words" in abuse of discretion review). Consequently, the district court's finding that the French court would not be receptive to the evidence sought was neither the wrong standard, nor legal error.

4.    Candel seeks to circumvent French proof-gathering restrictions.

Under the third *Intel* factor, Section 1782 discovery should be denied if it conceals an attempt to circumvent foreign proof-gathering restrictions. *Intel*, 542 U.S. at 264–65. The district court did not abuse its discretion in finding circumvention here. The fact that Candel has been "forthright" about these circumvention attempts does not mean that circumvention has not occurred. Br. p.39.

"A discovery request pursuant to § 1782 is viewed as an attempt to circumvent foreign proof-gathering restrictions when the foreign tribunal has already rejected requests for the same documents." *In re Ex Parte Application Eni S.p.A. for Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use Foreign Procs.*, 2021 WL 1063390, at

*4 (D. Del. Mar. 19, 2021). Evidence that the applicant has side-stepped foreign discovery rules, such as evidence that the applicant sought assistance from the U.S. without first seeking discovery from the foreign tribunal, "raises the specter of abusive litigation tactics" and counsels in favor of denying the discovery. *In re Jagodzinski*, 2019 WL 1112389, at *7 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019); *see also CFE Int'l,* 2022 WL 17731821, at *8 (finding discovery that "seemingly would be available from individuals and entities in Mexico, further signal[led] an attempt to circumvent proof-gathering restrictions"); *In re Frasers Grp. PLC*, 2024 WL 139488, at *3 (D.N.J. Jan. 12, 2024) ("bypassing" English court by serving 1782 discovery weighed in favor of denying the 1782 application).

As discussed above, the French courts have already rejected requests for the same discovery Candel seeks here. While it may be true that Candel "technically did not circumvent" any French rulings by serving this discovery in France, this is only because Candel hastily withdrew its pending discovery requests after the high French court's decision denying CIAM's nearly identical request. *See Frasers*, 2024 WL

45

139488, at *4; ROA.1494. These decisions clearly demonstrated that the discovery sought is only available to shareholders with at least 5% ownership, which Candel does not have. Consequently, had Candel not withdrawn its request, it certainly would have been denied just like CIAM's. Candel withdrawing its doomed request and turning instead to the United States legal system for redress is the very definition of circumvention.

Candel's argument that these French rules merely fail to facilitate discovery, rather than prohibit it, is unavailing. Br. p.40. The *LEG Q* case illustrates the difference. In that case, the foreign court lacked a mechanism for pre-suit discovery from non-parties, but the actual subject matter of the discovery was not at issue. *LEG Q LLC v. RSR Corp.*, 2017 WL 3780213, at *10 (N.D. Tex. Aug. 31, 2017). Here, the issue is not that Candel is seeking information at the wrong time or through the wrong mechanism; instead, Candel is seeking information that, as a minority shareholder, it has *no right to discover under any circumstances*. As a shareholder with less than 5% ownership of Candel's shares, it is not permitted to seek extensive discovery of company agreements in France. ROA.1491, 1545. And, as noted above, Candel's document request seeks

46

confidential business secrets of Esso that it is not entitled to obtain under French law, specifically Article L151-1 of the French Commercial Code. ROA.1498–1501.

Section 1782 is meant to provide efficient means of assistance to participants in international litigation and encourage international courts to provide similar assistance in return. *Tex. Keystone*, 694 F.3d at 553–54. It is *not* meant to give litigants like Candel unmitigated access to massive amounts of information they would be prohibited from ever obtaining through ordinary means in a foreign jurisdiction. The district court did not abuse its discretion in preventing such overreaching circumvention.

CONCLUSION AND PRAYER

The district court "meaningfully engaged" in analyzing the *Intel* factors and provided adequate reasoning to deny Candel's Section 1782 Application and Subpoena. As Judge Easterbrook wrote over 20 years ago in *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.,* in reversing the district court's grant of a Section 1782 application, ". . . it remains best to conduct an Australian suit in Brisbane rather than in Milwaukee, which is 8,915 miles away." 362 F.3d 401, 406 (7th Cir. 2004). Here, it is best to conduct

47

a French lawsuit between French companies in a French court rather than in a U.S. federal court in Houston, or in an appeals court sitting in New Orleans. For the foregoing reasons, ExxonMobil respectfully requests that the Court affirm the judgment of the Southern District of Texas.

4899-4094-5527

Respectfully submitted,

SCOTT DOUGLASS &
   McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX  78701-3234
(512) 495-6300 – Telephone
(512) 495-6399 – Facsimile


By:  */s/ Santosh Aravind*
  Santosh Aravind
  State Bar No. 24095052
  saravind@scottdoug.com
  Rachel Stephenson
  State Bar No. 24131691
  rstephenson@scottdoug.com

ATTORNEYS FOR
EXXONMOBIL CORPORATION

49

CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief of Appellee complies with Rules 32(a)(5), 32(a)(6), and 28.1(e)(2)(B) of the Federal Rules of Appellate Procedure because it contains 10,269 words, excluding exempt parts. It complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it was prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

/s/ Santosh Aravind
Santosh Aravind

CERTIFICATE OF SERVICE

I certify that the foregoing Brief of Appellee was served through the electronic filing system on counsel of record on December 17, 2025.

Gabriela M. Ruiz
KING & RUIZ LLP
2 Biscayne Blvd., Suite 3200
Miami, Florida 33131
(305) 395-4984
gruiz@kingruiz.com

Stephen R. Halpin III
KING & RUIZ LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
(212) 500-6499
shapkin@kingruiz.com

/s/ Santosh Aravind
Santosh Aravind

50

4899-4094-5527